**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar No. 269109)
kspelman@jenner.com
Alexander M. Smith (Cal. Bar No. 295187)
asmith@jenner.com
633 West 5th Street, Suite 3600
Los Angeles, CA 90071
Telephone:   (213) 239-5100
Facsimile:    (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (applying *pro hac vice*)
dpanos@jenner.com
353 N. Clark Street
Chicago, IL 60654-3456
Telephone:   (312) 222-9350
Facsimile:    (312) 527-0484

Attorneys for Defendants
The Kraft Heinz Company and
Kraft Heinz Ingredients Corp.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARGUESS NOOHI and ROBERT BRYCE STEWART III, individually, and on behalf of all other members of the general public similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE KRAFT HEINZ COMPANY and KRAFT HEINZ INGREDIENTS CORP.,<br><br>Defendants. | Case No. 2:19-cv-10658-DSF-SK<br><br>The Honorable Dale S. Fischer<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Hearing:       June 8, 2020, 1:30 p.m.<br><br>Courtroom:       7D (First Street) |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 8, 2020, at 1:30 p.m., or as soon thereafter as the Court is available, Defendants The Kraft Heinz Company and Kraft Heinz Ingredients Corp. (collectively "Kraft Heinz") will appear before the Honorable Dale S. Fischer in Courtroom 7D of the federal courthouse located at 350 West 1st Street, Los Angeles, CA 90012 and will, and hereby does, move to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiffs' First Amended Class Action Complaint fails to state a claim on which relief can be granted.

In the alternative, Kraft Heinz will, and hereby does, move to dismiss: (1) Plaintiffs' claims on behalf of putative class members outside of California for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2); and (2) Plaintiffs' claims on behalf of putative class members outside of California, New York, Georgia, and Texas for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1).

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 13, 2020.

Kraft Heinz's motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Kraft Heinz's concurrently filed Request for Judicial Notice, any additional briefing on this subject (including Kraft Heinz's reply brief), and any evidence and arguments that Kraft Heinz may present to the Court at the hearing on this matter or otherwise.

Dated:  April 20, 2020

JENNER & BLOCK LLP

By:  /s/    Kate T. Spelman
           Kate T. Spelman

Attorneys for Defendants
The Kraft Heinz Company and
Kraft Heinz Ingredients Corp.

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................2

   I. FDA Regulations Govern the Disclosure of "Natural" and "Artificial" Flavors ........................................................................................................2

   II. Plaintiff's Lawsuit Challenges the Claim that Crystal Light has "No Artificial Flavors"..............................................................................................3

ARGUMENT ......................................................................................................6

   I. Plaintiffs Have Not Stated a Plausible Claim of Deception Against Kraft Heinz...................................................................................................6

      A. Plaintiffs Have Not Alleged with Plausibility or Particularity That the Malic Acid in Crystal Light Is Artificial DL-Malic Acid ................................................................................................7

      B. Plaintiffs Have Not Plausibly Alleged That the Malic Acid in Crystal Light Functions as a "Flavoring Agent" or That It "Resembles" the Characterizing Flavor of the Product .......................9

      C. Plaintiffs' Common-Law Claims Are Also Implausible and Defective .............................................................................................12

          1. Breach of Warranty...............................................................12

          2. Negligent Misrepresentation and Common-Law Fraud...........12

          3. Unjust Enrichment ................................................................13

   II. This Court Lacks Personal Jurisdiction Over The Claims of Non-California Class Members, Whose Alleged Injuries Have No Nexus to the Forum State....................................................................................14

   III. Plaintiffs Lack Standing to Litigate on Behalf of Class Members Outside of California, Georgia, New York, and Texas, Where They Bought Crystal Light................................................................................17

   IV. This Court Should Strike Plaintiffs' Untimely Class Allegations ...................19

CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andrade-Heymsfield v. Danone US Inc.*,
   No. 19-589, 2019 WL 3817948 (S.D. Cal. Aug. 14, 2019) .................................... 15, 16

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................... 6, 7, 11

*Bristol-Myers Squibb v. Superior Court*,
   137 S. Ct. 1773 (2017)..........................................................................................*passim*

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
   637 F.3d 1047 (9th Cir. 2011) ................................................................................ 6, 7

*Carpenter v. PetSmart, Inc.*,
   No. 19-1731, 2020 WL 996947 (S.D. Cal. Mar.4, 2020)........................................ 16, 18

*Corcoran v. CVS Health Corp.*,
   No. 15-3504, 2016 WL 4080124 (N.D. Cal. July 29, 2016) ................................... 18, 19

*Easter v. Am. W. Fin.*,
   381 F.3d 948 (9th Cir. 2004) ........................................................................................ 18

*Fenerjian v. Nongshim Co.*,
   72 F. Supp. 3d 1058 (N.D. Cal. 2014)............................................................................ 18

*Figy v. Frito-Lay N. Am., Inc.*,
   67 F. Supp. 3d 1075 (N.D. Cal. 2014)............................................................................. 9

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982)...................................................................................................... 18

*Green v. Cent. Mortg. Co.*,
   148 F. Supp. 3d 852 (N.D. Cal. 2015).......................................................................... 12

*Ham v. Hain Celestial Grp., Inc.*,
   70 F. Supp. 3d 1188 (N.D. Cal. 2014).......................................................................... 12

*Harris v. CVS Pharmacy, Inc.*,
   No. 13-2329, 2015 WL 4694047 (C.D. Cal. Aug. 6, 2015).......................................... 17

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ............................................................................. 14

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*,
  275 F. Supp. 3d 910 (N.D. Ill. 2017) ....................................................... 9

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..................................................... 17

*In re Dicamba Herbicides Litig.*,
  359 F. Supp. 3d 711 (E.D. Mo. 2019) ...................................................... 15

*In re Ditropan XL Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) .................................................... 17

*In re Flash Memory Antitrust Litig.*,
  643 F. Supp. 2d 1133 (N.D. Cal. 2009) ............................................... 18, 19

*In re Packaged Seafood Prods. Antitrust Litig.*,
  242 F. Supp. 3d 1033 (S.D. Cal. 2017) .................................................... 18

*Jones v. Micron Tech. Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019) ..................................................... 18

*Jones v. Nutiva, Inc.*,
  No. 16-711, 2016 WL 5210935 (N.D. Cal. Sept. 22, 2016) ......................... 19

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................. 6

*Marilao v. McDonald's Corp.*,
  632 F. Supp. 2d 1008 (S.D. Cal. 2009) .................................................... 13

*Martinez v. Aero Caribbean*,
  764 F. 3d 1062 (9th Cir. 2014) ............................................................... 17

*McKinnis v. Kellogg USA*,
  No. 07-2611, 2007 WL 4766060 (C.D. Cal. Sept. 19, 2007) .................. 12, 13

*Meaunrit v. ConAgra Foods Inc.*,
  No. 09-2220, 2010 WL 2867393 (N.D. Cal. July 20, 2010) ........................ 11

*Morales v. Unilever U.S., Inc.*,
  No. 13-2213, 2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) .......................... 18

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT;
MEMORANDUM OF POINTS & AUTHORITIES

*Osborne v. Kraft Foods Group, Inc.*,
  No. 15-2653 (N.D. Cal.) ....................................................................................... 7, 8

*Pilgrim v. General Motors Co.*,
  408 F. Supp. 3d 1160 (C.D. Cal. 2019) ................................................................ 15

*Rafferty v. Denny's, Inc.*,
  No. 18-2409, 2019 WL 2924998 (N.D. Ohio July 8, 2019).................................. 15

*Ramirez v. Baxter Credit Union*,
  No. 16-3765, 2017 WL 1064991 (N.D. Cal. Mar. 21, 2017) ................................ 19

*Ruso v. Morrison*,
  695 F. Supp. 2d 33 (S.D.N.Y. 2010) .................................................................... 20

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) .................................................................. 19

*Shabaz v. Polo Ralph Lauren Corp.*,
  586 F. Supp. 2d 1205 (C.D. Cal. 2008) ................................................................ 19

*Shalaby v. Bernzomatic*,
  281 F.R.D 565 (S.D. Cal. 2012) ....................................................................... 12, 13

*Spratley v. FCA US LLC*,
  No. 17-62, 2017 WL 4023348 (N.D.N.Y. Sept. 12, 2017) ................................... 15

*Tarzian v. Kraft Heinz Foods Co.*,
  No. 18-7148, 2019 Wl 5064732 (N.D. Ill. Oct. 10, 2019) .................................. 8, 9

*Torrent v. Yakult U.S.A., Inc.*,
  No. 15-124, 2015 WL 4335076 (C.D. Cal. July 14, 2015) ................................... 19

*Viggiano v. Hansen Natural Corp.*,
  944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................................ 6, 9, 12

**STATUTES**

Cal. Bus & Prof. Code § 17500 ................................................................................ 5

Cal. Bus & Prof. Code § 17200 . .............................................................................. 5

N.Y. G.B.L. § 349 ...................................................................................................... 5

N.Y. G.B.L. § 350 ...................................................................................................... 5

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT;
MEMORANDUM OF POINTS & AUTHORITIES

OCGA § 10-1-372 ................................................................................................. 5

Tex. Bus. & Com. Code § 17.46 ......................................................................... 5

**OTHER AUTHORITIES**

21 C.F.R. § 101.22 .................................................................................*passim*

21 C.F.R. § 170.3(o) ......................................................................... 2, 3, 10, 11

21 C.F.R. § 184.1069 ................................................................................ 1, 7, 10

FDA, *Food Labeling: Declaration of Ingredients*,
    56 Fed. Reg. 28592 (June 21, 1991) ................................................ 3, 10, 11

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT;
MEMORANDUM OF POINTS & AUTHORITIES

# **INTRODUCTION**

This lawsuit challenges Kraft Heinz's representation that Crystal Light — a fruit-flavored beverage concentrate sold in shelf-stable containers — contains "No Artificial Flavors." Notably, Plaintiffs do not dispute that Crystal Light is in fact made with natural flavors, which are the source of the product's fruity taste. Instead, Plaintiffs allege that Crystal Light's labeling is misleading because the product also contains malic acid, which Plaintiffs surmise is an artificial flavor. Based on these allegations, Plaintiffs assert statutory consumer fraud claims under California, New York, Georgia, and Texas law, as well as common-law claims on behalf of a putative nationwide class of consumers who purchased Crystal Light in the past decade. This Court should dismiss this lawsuit because Plaintiffs' theory of deception is deeply flawed in two core respects:

<u>First</u>, Plaintiffs' factual allegations do not establish — let alone with the particularity required by Rule 9(b) — that the malic acid in Crystal Light is "artificial." Plaintiffs acknowledge that malic acid comes in at least two forms: L-malic acid, which admittedly exists in nature, and DL-malic acid, which allegedly does not. Although Plaintiffs speculate that the malic acid in Crystal Light is DL-malic acid, they offer no factual support to substantiate this bare-bones allegation, and they have undertaken no effort to investigate whether the malic acid used in Crystal Light is natural or artificial. Many courts have dismissed similar lawsuits when the plaintiff failed to articulate *why* the offending ingredients were "artificial." And while Plaintiffs guess that artificial DL-malic acid might be cheaper and somehow more accurately mimic fruit flavors than its "natural" counterparts, this rank speculation is not sufficient to state a plausible claim.

<u>Second</u>, even if Plaintiffs could establish that the malic acid in Crystal Light is "artificial," they have not plausibly alleged that it functions as a "flavor" or that it "resembles" the characterizing flavor of the product. The FDA has made clear that malic acid can serve a variety of functional purposes, including serving as a "pH control agent" or a "flavor enhancer." 21 C.F.R. § 184.1069(c). Indeed, Plaintiffs' allegations about the functional role of malic acid suggest that it acts not as a flavor, but instead as a flavor

enhancer — *i.e.*, "a substance that "supplement[s], enhance[s], or modif[ies] the original taste . . . of the food, without imparting a characteristic taste . . . of its own." 21 C.F.R. § 170.3(o)(11). That is fatal to Plaintiffs' theory of deception, since the FDA has made clear — and Plaintiffs themselves concede — that "flavor enhancers" are distinct from "flavors" and need not be disclosed on the product's packaging. At most, Plaintiffs' complaint establishes the *possibility* that malic acid could act as a flavor in some circumstances. This possibility — which is dubious at best — is not sufficient to state a plausible claim.

Other allegations of the complaint also undermine Plaintiffs' conclusory assertion that the malic acid in Crystal Light resembles the product's characterizing flavor, which independently negates Plaintiffs' theory that malic acid constitutes a flavor. And the fact that Crystal Light might contain artificial *ingredients* does not salvage their theory of deception: Crystal Light does not purport to be a "natural" product, and no reasonable consumer would expect a zero-calorie, shelf-stable fruit drink concentrate labeled as having "No Artificial Flavors" to be completely free of artificial ingredients.

Even if this Court were to accept Plaintiffs' theory of deception, many of their class-wide claims are untenable. While Plaintiffs purport to represent a nationwide class of Crystal Light consumers, this Court lacks personal jurisdiction over the claims of class members who purchased Crystal Light outside of California: there is no nexus between their alleged injuries and the forum state, and Kraft Heinz is not subject to general jurisdiction in California. *See Bristol-Myers Squibb v. Superior Court*, 137 S. Ct. 1773 (2017). Plaintiffs — who allegedly purchased Crystal Light in California, Georgia, New York, and Texas — also lack standing to assert claims on behalf of putative class members in the other 46 states. And while Plaintiffs purport to assert claims on behalf of consumers who purchased Crystal Light in the past decade, the statute of limitations bars many of those claims.

## BACKGROUND

## I.    FDA Regulations Govern the Disclosure of "Natural" and "Artificial" Flavors.

The FDA has issued a regulation, 21 C.F.R. § 101.22, that governs the use and labeling of flavoring agents in food products. If a product label makes a representation with

respect to the "characterizing flavor" of the product (*e.g.*, strawberry), and the characterizing flavor comes from "natural flavor" *derived* from the "characterizing food ingredient" (*e.g.*, strawberries) rather than from the characterizing ingredient itself, the regulation directs the manufacturer to state that the product is "strawberry flavored" or "natural strawberry flavored." 21 C.F.R. § 101.22(i)(1)(i). Moreover, if a product contains both a characterizing flavor derived from the characterizing ingredient, and "other natural flavor which simulates, resembles or reinforces the characterizing flavor," the manufacturer must state that the product contains "natural flavor with other natural flavor." The regulations specify only two circumstances under which a food must be labeled as "artificially flavored." As relevant here, a product must be identified as "artificially flavored" if the food "contains any artificial flavor which *simulates, resembles or reinforces* the characterizing flavor." *Id.* § 101.22(i)(2) (emphasis added).

Notably, these flavor regulations apply only to "flavoring agents and adjuvants," which are "[s]ubstances added to impart or help impart a taste or aroma in food." *Id.* § 170.3(o)(12). The regulations do *not* apply to "flavor enhancers," which are "[s]ubstances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." *Id.* § 170.3(o)(11). As the FDA has made clear, "flavor enhancers are not flavorings," and thus may not be included in a product's flavor disclosure but rather "must be declared in the ingredient list by their common or usual names." FDA, *Food Labeling: Declaration of Ingredients*, 56 Fed. Reg. 28592, 28598 (June 21, 1991) (noting that the "FDA's regulations regarding the various functional effects of human food ingredients differentiate between 'flavoring agents and adjuvants' and 'flavor enhancers'").

## II. Plaintiff's Lawsuit Challenges the Claim that Crystal Light has "No Artificial Flavors."

Kraft Heinz manufactures Crystal Light, which is a fruit-flavored beverage concentrate. Crystal Light comes in a variety of fruit flavors, including "Berry Sangria," "Strawberry Kiwi," "Mango Passionfruit," and "Black Cherry Lime." *See* First Am. Class

Action Compl. ("FAC") ¶ 10.  In contrast to fresh fruit juices, which come in relatively bulky containers and often require refrigeration, Crystal Light is a shelf-stable, concentrated product that comes in either powder or liquid form.  Indeed, despite its tiny size, a 1.62-ounce bottle of Crystal Light Liquid can make up to 24 eight-ounce drinks, and a 0.13-ounce packet of Crystal Light Pure can flavor a full glass.  *See id.* ¶ 51.

As the packaging makes clear, Crystal Light derives its characteristic fruity taste from natural flavors, which it discloses (along with all other ingredients) in the ingredient list on the back of each package.  For that reason, Kraft Heinz truthfully states on the front of the label that Crystal Light contains "Natural Flavor With Other Natural Flavor" and "No Artificial Flavors":




*Id.*

In addition to natural flavor, Crystal Light contains a variety of ingredients that serve other functional purposes.  For example, Crystal Light contains sweeteners (including sugar and/or zero-calorie sweeteners such as rebiana and sucralose, depending on the precise variety) and coloring agents (such as hibiscus flower extract, purple carrot extract, and

turmeric oleoresin).  It also contains a small amount of malic acid, which increases the product's acidity.[1]

Plaintiffs allege that the presence of malic acid in Crystal Light renders its labeling misleading, notwithstanding the regulatory requirements to the contrary.  In particular, they claim — without alleging that they conducted any sort of analysis of the product at issue — that Crystal Light must contain a form of malic acid known as DL-malic acid, which supposedly does not occur in nature.  *Id.* ¶¶ 22, 31.  They also allege that the addition of malic acid modifies the balance of sugars and acids in Crystal Light and thereby alters the tartness of the product's characteristic fruity flavors.  *Id.* ¶¶ 25, 28.  Plaintiffs accordingly claim that the malic acid in Crystal Light is an "artificial flavor" and that the "No Artificial Flavors" claim on the packaging is deceptive.  *Id.* ¶ 14.

Based on these allegations, Plaintiffs assert statutory consumer fraud claims under California, Georgia, New York, and Texas law.[2]  Plaintiffs also assert common-law claims for breach of express warranty, common-law fraud, negligent misrepresentation, and unjust enrichment.  *See* FAC ¶¶ 111-40.  Plaintiffs purport to assert these claims on behalf of a putative nationwide class of consumers who purchased the challenged Crystal Light products in the preceding decade, as well as subclasses of consumers who purchased the products in California, Georgia, New York, and Texas in the same timeframe.  *See id.* ¶¶ 64-80.  Plaintiffs seek a variety of remedies on behalf of these putative class members,

---

[1] While added to balance pH, malic acid could also be deemed a "flavor enhancer."  *See infra* § I.B.  But even then, the FDA regulations do not treat it as a "flavor" and do not permit it to be characterized on the labeling as a "flavor."

[2] In particular, Plaintiffs assert claims under: (1) the California False Advertising Law, Cal. Bus & Prof. Code §§ 17500 *et seq.* (*see* FAC ¶¶ 81-92); (2) the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200 *et seq.* (*see* FAC ¶¶ 93-110); (3) section 349 of the New York General Business Law (*see* FAC ¶¶ 141-52); (4) sections 350 and 350-a(1) of the New York General Business Law (*see* FAC ¶¶ 153-75); (5) the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.46 *et seq.* (*see* FAC ¶¶ 176-85); and (6) the Georgia Uniform Deceptive Trade Practices Act, OCGA §§ 10-1-372 *et seq.* (*see* FAC ¶¶ 186-93).

including restitution; actual, statutory, and punitive damages; injunctive relief; and attorney's fees.  *See id.* ¶ 196 (Prayer for Relief).

## ARGUMENT

## I.   Plaintiffs Have Not Stated a Plausible Claim of Deception Against Kraft Heinz.

To survive a motion to dismiss, a complaint "must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 883-84 (C.D. Cal. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Facts indicating the "mere *possibility* of misconduct" fall short of meeting this plausibility standard.  *Iqbal*, 556 U.S. at 678 (emphasis added).  Rather, the pleader must "allege more by way of factual content to 'nudg[e] his claim'" of unlawful action "across the line from conceivable to plausible."  *Id.* at 683 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Furthermore, Plaintiffs' statutory consumer fraud claims, as well as their claims for fraud and negligent misrepresentation, are also subject to Rule 9(b)'s heightened pleading standard.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (holding that Rule 9(b) applies to state-law claims that "allege a unified course of fraudulent conduct," whether or not fraud is a necessary element of those claims).  Rule 9(b) requires Plaintiffs to "state with particularity the circumstances constituting fraud" — or, in other words, to identify the who, what, where, when, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and *why it is false*."  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011) (alteration in original) (internal quotations and citations omitted) (emphasis added).

Here, Plaintiffs allege that Kraft Heinz misrepresented that its Crystal Light powders contain "no artificial flavors," even though they supposedly contain DL-malic acid.  But Plaintiffs' allegation that Crystal Light contains DL-malic acid (as opposed to naturally occurring L-malic acid) is based on nothing but sheer speculation.  And even if Plaintiffs had plausibly alleged that Crystal Light contains artificial DL-malic acid, they have not plausibly alleged that Kraft Heinz uses it as a "flavor" — as would be required to establish

that the "No Artificial *Flavors*" representation is false.

**A.    Plaintiffs Have Not Alleged with Plausibility or Particularity That the Malic Acid in Crystal Light Is Artificial DL-Malic Acid.**

Plaintiffs have not adequately alleged that the malic acid used in Crystal Light is even "artificial."  If the malic acid in Crystal Light is not artificial, Plaintiffs cannot claim that Crystal Light contains "artificial flavors," and their entire theory of deception crumbles.

As the FDA has made clear, and as Plaintiffs concede, malic acid "occurs naturally in various foods."  21 C.F.R. § 184.1069; *see also* FAC ¶ 22 (admitting that malic acid "occurs naturally in various fruits").  Plaintiffs attempt to draw a distinction between L-malic acid (which they admit occurs in nature) and DL-malic acid (which allegedly does not occur in nature).  *Id.*  But even if this distinction is scientifically sound, it provides no support for Plaintiffs' unfounded assertion that Crystal Light contains "artificial" DL-malic acid, as opposed to "natural" L-malic acid.

Plaintiffs appear to speculate that Crystal Light contains artificial DL-malic acid, as opposed to naturally occurring L-malic acid, as it is "likely cheaper" or "more accurately resemble[s] natural flavors" than L-Malic acid, citric acid, or "other acids."  FAC ¶ 32.  But this baseless conjecture does nothing more than raise the "mere possibility" that Kraft Heinz uses artificial DL-malic acid, as opposed to naturally occurring L-malic acid.  *Iqbal*, 556 U.S. at 678.  That idle guesswork does not suffice to "nudge" Plaintiffs' theory of deception "across the line from conceivable to plausible."  *Id.* at 683 (citation and internal quotation marks omitted).  And Plaintiffs' conjecture that it would likely be cheaper to use artificial DL-malic acid certainly does not satisfy Rule 9(b), which requires Plaintiffs to articulate with particularity "*why* [Crystal Light's labeling] is false."  *Cafasso*, 637 F.3d at 1055 (emphasis added).

*Osborne v. Kraft Foods Group, Inc.*, Case No. 15-2653 (N.D. Cal. Oct. 15, 2015), is instructive.  In challenging the phrase '100% Natural' found on Capri-Sun juice drinks, the plaintiff in *Osborne* alleged that Kraft had used an "artificial" version of citric acid, even though the FDA has recognized that there is a "natural" version of citric acid.  The court

dismissed the complaint, ruling that the plaintiff had failed to adequately allege that the citric acid used in Capri-Sun was in fact the artificial version. *See* RJN Exs. 1-2. At the October 15, 2015 hearing on the motion to dismiss, the court explained:

> You're putting the burden on [the defendant]. I mean, you have a pleading burden at the complaint stage. You can't just file a lawsuit without having actual reason to believe that the ingredient is not all natural and then say I need to do discovery to see if my guess is correct.
>
> \*      \*      \*
>
> [I]t seems like you have no idea whether Kraft's citric acid that it uses in Capri Sun is natural or not, but you filed a lawsuit anyway . . . . [I]t seems like you simply didn't do any investigation before filing the lawsuit.

RJN Ex. 1, at 5-7, 12.

Likewise, in *Tarzian v. Kraft Heinz Foods Co.*, the plaintiffs — like the plaintiffs in *Osborne* — alleged that Capri-Sun was mislabeled as having "no artificial preservatives" because it contained supposedly "artificial" citric acid. No. 18-7148, 2019 WL 5064732, at *1 (N.D. Ill. Oct. 10, 2019). Although the plaintiffs acknowledged that citric acid could be naturally "produced through extraction from fresh fruits," they speculated that Kraft Heinz used the artificial version because it was more "economically viable" to do so. *Id.* The court held that this allegation was not sufficient to state a plausible claim. While the plaintiffs alleged that there was a "common industry practice" of using artificial "fermented citric acid," the court agreed that these allegations were "insufficient to link fermented citric acid to that used in Capri Sun" and that the plaintiffs "failed to draw a connection between the common industry practice and the *actual practice* used by Kraft." *Id.* at *4.

Here, like the plaintiffs in *Osborne* and *Tarzian*, Plaintiffs here have not provided *any* factual support for their speculation that the malic acid in Crystal Light is artificial DL-malic acid, as opposed to natural L-malic acid; instead, they have impermissibly "put the burden on [Kraft Heinz]" to disprove their baseless allegations. *Osborne*, RJN Ex. 1 at 12. And while Plaintiffs speculate that it would be "less expensive" to use DL-malic acid or that it "more accurately resemble[s] natural flavors," (FAC ¶ 32), their speculation that it

is more "economically viable" to use artificial malic acid does not establish that Kraft Heinz actually does so. *Tarzian*, 2019 WL 5064732, at *1; *see also Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1090 (N.D. Cal. 2014) (dismissing false advertising claim where the plaintiff "provide[d] no detail whatsoever about how or why the offending ingredients [were] unnatural"). Plaintiffs' unfounded supposition that Crystal Light includes artificial DL-malic acid does not come close to stating a plausible claim — let alone alleging fraud with the particularity required by Rule 9(b).

### B. Plaintiffs Have Not Plausibly Alleged That the Malic Acid in Crystal Light Functions as a "Flavoring Agent" or That It "Resembles" the Characterizing Flavor of the Product.

Even assuming that Plaintiffs have plausibly alleged that Crystal Light contains artificial malic acid, Plaintiffs have not plausibly alleged that the use of such malic acid renders the product labeling inaccurate or misleading in any respect.

As a preliminary matter, the packaging of Crystal Light does not represent that the product is completely free of artificial ingredients. Instead, it represents that Crystal Light contains "No Artificial Flavors." *See* FAC ¶ 51. Thus, the potential presence of artificial *ingredients* has no bearing on the accuracy of the representation at issue. *See Viggiano*, 944 F. Supp. 2d at 889, 893-94 (holding that presence of sucralose and other "artificial" ingredients did not render the statement "all natural flavors" misleading because this phrase "accurately describes the product"). And this conclusion accords with common sense: even if a consumer reasonably expected that a processed fruit drink concentrate was free of artificial flavors, it would not be reasonable to conclude that it was free of artificial ingredients whatsoever. *See, e.g.*, *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 275 F. Supp. 3d 910, 923 (N.D. Ill. 2017) (dismissing lawsuit premised on inclusion of cellulose and potassium sorbate in packaged, pre-grated parmesan cheese and emphasizing that "[t]he products are packaged and shelf-stable at room temperature, a quality that reasonable consumers know is not enjoyed by pure cheese"). Thus, to state a plausible claim of deception, Plaintiffs must establish that the malic acid in Crystal Light

functions as a "flavoring agent" that "simulates, resembles or reinforces the characterizing flavor of the product." 21 C.F.R. § 170.3(o)(12); *id.* § 101.22(i)(2). They have not done so.

First, far from establishing that Kraft Heinz uses malic acid as a flavoring agent, the allegations of the complaint actually suggest that Kraft Heinz uses malic acid as a "flavor enhancer" — *i.e.*, a "substance added to supplement, enhance, or modify the original taste and/or aroma of the food, without imparting a characteristic taste or aroma of its own." *Id.* § 170.3(o)(11). Crystal Light is a fruit-flavored powdered beverage. Plaintiffs do not allege that malic acid has its own fruit flavor — or any "characteristic taste or aroma of its own." Instead, they allege that malic acid "contribute[s] to the tartness" of fruit juices and that it can be used to modify the "sugar to acid ratio." FAC ¶ 25; *see also, e.g.*, *id.* ¶ 28 ("Adding DL-Malic Acid to a fruit juice solution containing L-Malic Acid would change the concentration of Malic Acid in the solution and the ration of total Malic Acid to sugars in that solution."). In other words, Plaintiffs' allegations establish that malic acid "enhances" and "modifies" the *other* characteristic fruit flavors present in each variety of Crystal Light, which makes it a textbook example of a flavor enhancer. Indeed, the FDA has explicitly recognized that malic acid can be used for this purpose. *See* 21 C.F.R. § 184.1069(c).

While Plaintiffs admit that malic acid "would most likely not" act as a flavoring agent in other foods with different flavor profiles (such as vinegary foods), they claim it acts as such in Crystal Light because it is supposedly a "core component" of the product's characterizing fruit flavors. FAC ¶¶ 44-45. But the relevant question is not whether malic acid is a *component* of the characterizing fruit flavor; instead, it is whether it "impart[s] a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11). That is the precise distinction the FDA draws between "flavors" and "flavor enhancers," the latter of which are not subject to FDA regulations governing natural versus artificial flavors. *See* 56 Fed. Reg. at 28598; *cf.* FAC ¶ 30 (noting the distinction between a flavor and a flavor enhancer).

Plaintiffs attempt to sidestep this defect by alleging that Kraft Heinz does not "have the ability to command DL-Malic Acid to only perform certain functions" and that it

"should not be allowed to decide which Malic Acid constitutes only a flavor enhancer or a [pH] balancer." FAC ¶ 30. But it is the FDA — not Kraft Heinz — that has distinguished between "flavors" and "flavor enhancers." *See* 56 Fed. Reg. at 28598. The fact that malic acid affects the taste or chemical composition of Crystal Light does not render it a "flavor." And even if Plaintiffs' allegations were sufficient to establish that malic acid *could* act as a "flavor" (which they are not), the "mere possibility" that it functions as a flavor is not enough to state a plausible claim that Crystal Light contains "artificial flavors." *Iqbal*, 556 U.S. at 678. Absent any plausible allegation that malic acid provides a "characteristic taste or aroma of its own" and does not merely "enhance" or "modify" other flavors, 21 C.F.R. § 170.3(o)(11), this Court should dismiss Plaintiffs' lawsuit.

Moreover, while Plaintiffs allege that the products' "fruit flavors containing DL-Malic Acid resemble the natural characterizing fruity flavors Defendants claim are in their products" (FAC ¶ 52), that is incorrect. As Plaintiffs recognize, the relevant inquiry for determining the presence of "artificial" flavor under 21 C.F.R. § 101.22(i)(2), is whether the allegedly synthetic malic acid *itself* "resembles" the characterizing fruit flavor of the product (*e.g.*, "strawberry kiwi" or "black cherry lime"). *See* FAC ¶ 48. At most, Plaintiffs' allegations suggest that the malic acid used in Crystal Light impacts the tartness of the characterizing flavor — not that it "resembles" that flavor in any respect. This is independently fatal to Plaintiffs' theory that malic acid constitutes an "artificial" flavor.[3]

---

[3] Furthermore, to the extent Plaintiffs allege that Kraft Heinz violated 21 C.F.R. § 101.22 by failing to disclose that Crystal Light was "artificially flavored" on the front of the packaging, that claim is unavailing because, even if the malic acid were artificial, the regulation only applies if the product contains artificial *flavors* — not flavor enhancers or other allegedly "artificial" substances. *See* 21 C.F.R. § 101.22(i)(2). In other words, any failure-to-disclose theory would be preempted by federal law, as it would necessarily seek to impose a labeling requirement above and beyond the requirements imposed by the FDA. *See, e.g.*, *Meaunrit v. ConAgra Foods Inc.*, No. 09-2220, 2010 WL 2867393, at *5-6 (N.D. Cal. July 20, 2010) (holding that lawsuit was preempted to the extent it sought "to impose different requirements on labeling" than those imposed by federal law).

### C.   Plaintiffs' Common-Law Claims Are Also Implausible and Defective.

#### 1.   Breach of Warranty

Like their statutory consumer fraud claims, Plaintiffs' claim for breach of express warranty is premised on the allegation that the phrase "No Artificial Flavors" is false and misleading.  But absent any plausible allegation that the malic acid in Crystal Light is "artificial" or that it functions as a "flavor," Plaintiffs cannot state a plausible breach-of-warranty claim.  Indeed, courts routinely dismiss warranty claims in food labeling cases where the challenged statements are accurate.  *See, e.g.*, *Viggiano*, 944 F. Supp. 2d at 983-84 (dismissing breach-of-warranty claim premised on term "all natural flavors" because this phrase "accurately describe[d] the product"); *McKinnis v. Kellogg USA*, No. 07-2611, 2007 WL 4766060, at *5 (C.D. Cal. Sept. 19, 2007) (dismissing breach-of-warranty claim when defendant accurately represented that its cereal contained "natural fruit flavors").

#### 2.   Negligent Misrepresentation and Common-Law Fraud.

In a false advertising case, a plaintiff cannot state a claim for negligent misrepresentation or common-law fraud absent allegations that the labeling is likely to deceive a reasonable consumer.  *See Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (citations omitted) (noting that the "reasonable consumer" standard "also applies to common law fraud and negligent misrepresentation claims") (citations omitted).  Furthermore, because both claims sound in fraud, they are subject to Rule 9(b)'s "heightened pleading standard." *Green v. Cent. Mortg. Co.*, 148 F. Supp. 3d 852, 880 (N.D. Cal. 2015) (collecting cases).  Accordingly, Plaintiffs' claims for common-law fraud and negligent misrepresentation fail for the same reason as their statutory consumer fraud claims: they have not established — let alone with the particularity required by Rule 9(b) — that the malic acid in Crystal Light is "artificial" or that it functions as a "flavor."

Furthermore, Plaintiffs have not alleged with particularity that Kraft Heinz intended to induce reliance on the "No Artificial Flavors" claim, as is required to state a claim for fraud or negligent misrepresentation.  *See, e.g.*, *Shalaby v. Bernzomatic*, 281 F.R.D 565, 574 (S.D. Cal. 2012) (dismissing complaint where plaintiff failed to plead defendant's

intent to induce reliance with particularity).  Aside from two formulaic, one-sentence allegations[4] of intent to induce reliance, Plaintiffs' complaint is bereft of any factual allegations suggesting that Kraft Heinz intended to induce consumers to rely on the representation that Crystal Light contains "No Artificial Flavors."  In fact, Plaintiffs even admit that Kraft Heinz might not have known that its alleged misrepresentations were false at all.  *See* FAC ¶¶ 60-61 (alleging that Kraft Heinz "knew *or should have known*" that the "No Artificial Flavors" representation was false and that DL-malic acid is not naturally occurring) (emphasis added).  Plaintiffs' conclusory allegations of intent to induce reliance are woefully insufficient to state a fraud or negligent misrepresentation claim, especially with the particularity required by Rule 9(b).

### 3.    Unjust Enrichment.

Finally, Plaintiffs fail to allege facts to support their claim that Kraft Heinz was "unjustly enriched."  Their theory of unjust enrichment is that Crystal Light was falsely advertised as having "no artificial flavors."  But because no reasonable consumer would be deceived by the challenged labeling, Plaintiffs cannot show that Kraft Heinz has been "unjustly enriched" by retaining the monies paid by the putative class to purchase the products.  *See, e.g.*, *Marilao v. McDonald's Corp.*, 632 F. Supp. 2d 1008, 1013 (S.D. Cal. 2009) (dismissing claim for unjust enrichment predicated on same allegations as UCL claim because "Plaintiff allege[d] no wrongful conduct" by the defendant); *McKinnis*, 2007 WL 4766060, at *6 (dismissing unjust enrichment claim where "Plaintiffs . . . failed to state any substantive claim" that the packaging of Froot Loops would mislead a reasonable consumer).  This Court should accordingly dismiss Plaintiffs' claim for unjust enrichment.

---

[4] *See* FAC ¶ 114 ("At the time Defendants made the statement to Plaintiff [sic], Defendants intended to induce Plaintiffs to purchase the Products."); *id.* ¶ 130 ("The misrepresentations and/or omissions made by Defendants . . . were intended to induce and actually induced Plaintiffs and the Class and Sub-Classes' Members to purchase the Products.").

## II.   This Court Lacks Personal Jurisdiction Over The Claims of Non-California Class Members, Whose Alleged Injuries Have No Nexus to the Forum State.

Even if Plaintiffs' theory of deception were plausible (which it is not), this Court cannot exercise personal jurisdiction with respect to the claims of putative class members outside of California.  Indeed, Plaintiffs' complaint contains *no* facts that support personal jurisdiction over Kraft Heinz as to claims arising from purchases outside of California.

The Supreme Court has long held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984).   The Supreme Court has recently applied that principle to hold that a court cannot exercise specific personal jurisdiction over the claims of nonresident class members whose injuries did not take place in the forum state.  *See Bristol-Myers*, 137 S. Ct. at 1781.

In *Bristol-Myers*, the plaintiffs — most of whom were not California residents — sued Bristol-Meyers Squibb, a non-California corporation, in California state court for alleged injuries arising out of their use of the drug Plavix.  *Id.* at 1778.  The Supreme Court held that the California state courts could not exercise specific personal jurisdiction over the claims of non-resident plaintiffs, as they "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California.  *Id.* at 1781.  In so holding, the Court emphasized that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California — and allegedly sustained the same injuries as did the nonresidents — does not allow the State to assert specific jurisdiction over the nonresidents' claims."  *Id.*  "[W]hat is missing," the Court concluded, "is a connection between the forum and the specific claims at issue."  *Id.*

Like the plaintiffs in *Bristol-Myers,* Plaintiffs here seek to assert claims on behalf of class members outside of California against Kraft Heinz — which is not a California resident and is not subject to general jurisdiction in California — based on purchases that took place in other states.  Under similar circumstances, federal courts in California have

NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES

held that *Bristol-Myers* bars them from exercising personal jurisdiction over the claims of non-resident class members against a non-resident defendant.[5]

For example, in *Pilgrim v. General Motors Co.*, the plaintiffs brought a putative class action in this District on behalf of automobile purchasers from twenty-one separate states. 408 F. Supp. 3d 1160, 1163 (C.D. Cal. 2019).  Judge Walter dismissed the claims of the out-of-state plaintiffs — and the out-of-state class members they purported to represent — for lack of personal jurisdiction.  Although the plaintiffs argued that "*Bristol-Myers* does not apply because this case is a class action," Judge Walter disagreed: "Whether an action is brought as a class action has no real effect on whether a defendant can challenge a court's exercise of personal jurisdiction over it." *Id.* at 1167.  Accordingly, because there was "no basis for the Court to constitutionally exercise personal jurisdiction over . . . claims against GM that arise entirely from out-of-state activities that have no connection to California," Judge Walter dismissed those claims. *Id.* at 1168.

Likewise, in *Andrade-Heymsfield v. Danone US Inc.*, the plaintiffs sued Danone in the Southern District of California and asserted claims under both California and New York law.  No. 19-589, 2019 WL 3817948, at *2 (S.D. Cal. Aug. 14, 2019).  The court held that *Bristol-Myers* precluded the exercise of personal jurisdiction over the claims asserted by the New York plaintiff on behalf of New York class members.  While the plaintiffs argued that *Bristol-Myers* was distinguishable because it involved a mass tort action in which each plaintiff was a named plaintiff, the court rejected this argument and "agree[d] with the line

---

[5] Many federal courts outside of California have reached the same conclusion.  *See, e.g.*, *Spratley v. FCA US LLC*, No. 17-62, 2017 WL 4023348, at *7 (N.D.N.Y. Sept. 12, 2017) (applying *Bristol-Myers* to hold that "the Court lacks specific jurisdiction over the out-of-state Plaintiffs' claims" when they "have shown no connection between their claims and Chrysler's contacts with New York"); *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 723 (E.D. Mo. 2019) (dismissing nationwide class claims and holding that *Bristol-Myers* "applies with equal force in the class action context"); *Rafferty v. Denny's, Inc.*, No. 18-2409, 2019 WL 2924998, at *7 (N.D. Ohio July 8, 2019) (applying *Bristol-Myers* in FLSA action to hold that "exercising personal jurisdiction over Denny's for claims of any out-of-state putative collective member would violate due process").

of cases that held *Bristol-Myers* should apply where, as here, non-resident class members assert state-law claims against non-resident defendants . . . ." *Id.* at *3.  Absent any basis for personal jurisdiction, the court dismissed the non-California class members' claims.  *Id.* at *5.

And most recently, in *Carpenter v. PetSmart, Inc.*, the court rejected the plaintiffs' efforts to assert claims on behalf of a nationwide class and dismissed the claims of class members outside of California for lack of personal jurisdiction.  No. 19-1731, 2020 WL 996947, at *1 (S.D. Cal. Mar. 4, 2020).  Although the plaintiffs argued that *Bristol-Myers* was limited to the mass tort context, the court "agree[d] . . . that *Bristol-Myers Squibb* applies in the nationwide class action context" and that "a state cannot assert specific personal jurisdiction over a defendant for the claims of unnamed class members that would not be subject to specific personal jurisdiction if asserted as individual claims."  *Id.* at *5.  As the court explained:

> Whether the individuals who made those out of state purchases are named plaintiffs as part of a mass action, named as representatives for out of state class members, or unnamed members of a putative nationwide class of plaintiffs is a distinction without a difference . . . [I]t can hardly be argued that a defendant's due process rights are better served by one in-state plaintiff seeking to represent a nationwide class than by multiple named plaintiffs each seeking to represent a class of other individuals from their particular jurisdiction whose purchases were subject to the same state common law and consumer protection laws.  None of these differences warrant a holding other than that the court lacks personal jurisdiction over the defendant with respect to out of state claims regardless of the composition of the named plaintiffs.

*Id.* at *6.  In other words, the court concluded, it would "fundamentally alter the existing landscape of personal jurisdiction jurisprudence" if a California district court could exercise "personal jurisdiction over claims where there would not be personal jurisdiction if the claims were brought individually, for no other reason than that those same claims were brought as part of a class action."  *Id.*

The reasoning of *Pilgrim*, *Andrade-Heymsfield*, and *Carpenter* applies with equal force here.  There can be no dispute that Kraft Heinz — which is incorporated in Delaware

and headquartered in Illinois and Pennsylvania — is not subject to general jurisdiction in California. *See generally Martinez v. Aero Caribbean*, 764 F. 3d 1062, 1070 (9th Cir. 2014) ("[T]he 'paradigm' for a for general jurisdiction are a corporation's place of incorporation and principal place of business. Only in an 'exceptional case' will general jurisdiction be available anywhere else.") (quoting *Daimler AG v. Bauman*, 571 U.S. 117 (2006)). And this Court cannot exercise specific personal jurisdiction over the claims of class members who purchased Crystal Light outside of California, as there is no connection whatsoever between those purchases and the forum state. Given the absence of any nexus between the injuries of non-resident class members and the state of California, this Court should dismiss their claims for lack of personal jurisdiction.

### III. Plaintiffs Lack Standing to Litigate on Behalf of Class Members Outside of California, Georgia, New York, and Texas, Where They Bought Crystal Light.

In addition to their statutory consumer fraud claims under California, Georgia, New York, and Texas law, Plaintiffs also seek to assert claims for fraud, negligent misrepresentation, breach of express warranty, and unjust enrichment on behalf of a nationwide class. Even assuming that the Court does not dismiss this lawsuit outright (*see supra* § I) or dismiss all claims on behalf of putative class members outside of California for lack of personal jurisdiction (*see supra* § II), it should nonetheless dismiss any claims on behalf of putative class members outside of these four states for lack of standing.

"[S]tanding is claim- and relief-specific, such that a plaintiff must establish Article III standing for each of her claims and for each form of relief sought." *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1064-65 (N.D. Cal. 2015) (citation and internal quotation marks omitted); *accord Harris v. CVS Pharmacy, Inc.*, No. 13-2329, 2015 WL 4694047, at *4 (C.D. Cal. Aug. 6, 2015). In a class action, "at least one named plaintiff must have standing with respect to each claim the class representatives seek to bring." *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007). Thus, when "a representative plaintiff is lacking for a particular state, all claims based on

*that* state's laws are subject to dismissal."[6]  *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (citing *Ditropan*, 529 F. Supp. 2d at 1106-07).

Here, the named plaintiffs reside in California and New York and allege that they purchased the challenged Crystal Light products in California, Georgia, New York, and Texas.  FAC ¶¶ 4, 5, 12, 13.  Because neither of the named plaintiffs resides in or suffered an injury in any other state, Plaintiffs "lack standing to assert claims based on those states' laws."  *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1082-83 (N.D. Cal. 2014); *see also Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019) ("Courts in the Ninth Circuit have consistently held that a plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured."); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1095 (S.D. Cal. 2017) ("The overwhelming majority of courts have held that Article III standing for state law claims is necessarily lacking when no plaintiff is alleged to have purchased a product within the relevant state.").

The fact that Plaintiffs do not assert any claims under the consumer protection statutes of other states is irrelevant, as Article III standing requirements apply with equal force to both statutory and common-law claims.  *See Corcoran v. CVS Health Corp.*, No. 15-3504, 2016 WL 4080124, at *3 (N.D. Cal. July 29, 2016) ("Plaintiffs do not have standing to bring the common law claims under the laws of the . . . states to which they have

---

[6] The Supreme Court and the Ninth Circuit have both held that district courts may "address[] issues of standing before . . . address[ing] issues of class certification."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir. 2004); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (holding that courts may dismiss or strike class allegations if the deficiencies are "plain enough from the pleadings").  "Following *Easter*, California district courts frequently address the issue of Article III standing at the pleading stage and dismiss claims asserted under the laws of states in which no plaintiff resides or has purchased products."  *Carpenter*, 2020 WL 996947 at *7 (collecting cases); *see also Morales v. Unilever U.S., Inc.*, No. 13-2213, 2014 WL 1389613, at *5 (E.D. Cal. Apr. 9, 2014) ("Because plaintiffs' lack of standing is 'plain enough from the pleadings,' it is an appropriate basis for dismissal even if it overlaps with issues typically raised at class certification.") (quoting *Falcon*, 457 U.S. at 160).

alleged no connection.  The common law claims brought based on the laws of those states are therefore dismissed."); *Flash Memory*, 643 F. Supp. 2d at 1163-64 (dismissing unjust enrichment claims asserted under laws of states in which no named plaintiff resided).  This Court should therefore dismiss Plaintiffs' claims on behalf of putative class members outside of California, Georgia, New York, and Texas for lack of standing.

## IV.    This Court Should Strike Plaintiffs' Untimely Class Allegations.

Finally, if this Court does not dismiss this lawsuit outright, it should dismiss or strike Plaintiffs' putative class claims insofar as they are premised on purchases that took place outside of the relevant statutes of limitations.

"Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery." *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).  Numerous courts have accordingly stricken class allegations as "facially invalid" when they included individuals whose claims were barred by the statute of limitations.  *Ramirez v. Baxter Credit Union*, No. 16-3765, 2017 WL 1064991, at *8 (N.D. Cal. Mar. 21, 2017); *see also, e.g.*, *Torrent v. Yakult U.S.A., Inc.*, No. 15-124, 2015 WL 4335076, at *4 (C.D. Cal. July 14, 2015) (granting motion to strike "with respect to the time and place components of the class definition" when it included individuals whose claims fell outside the statute of limitations); *Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008) (striking class allegations of unlawful conduct outside of applicable statute of limitations).

Here, Plaintiffs seek to certify several classes of consumers who purchased Crystal Light products in the preceding ten years.  *See* FAC ¶¶ 64-68.  But under California law, the relevant statutes of limitations extend no further than four years — *i.e.*, to December 17, 2015.  *See Jones v. Nutiva, Inc.*, No. 16-711, 2016 WL 5210935, at *10 (N.D. Cal. Sept. 22, 2016) (noting that the statute of limitations is three years for claims under the False Advertising Law and four years for claims under the Unfair Competition Law and breach of warranty claims).  Accordingly, this Court should dismiss Plaintiffs' putative class-wide

claims to the extent they are premised on purchases of Crystal Light before December 17, 2015.[7]

### **CONCLUSION**

For the foregoing reasons, this Court should grant Kraft Heinz's motion to dismiss.

Dated:  April 20, 2020

JENNER & BLOCK LLP

By:  /s/      Kate T. Spelman
         Kate T. Spelman

Attorneys for Defendants
The Kraft Heinz Company and
Kraft Heinz Ingredients Corp.

---

[7] The longest statute of limitations potentially applicable to Plaintiffs' claims under Georgia, New York, and Texas law is New York's six-year statute of limitations for common-law fraud.  *See Ruso v. Morrison*, 695 F. Supp. 2d 33, 49 (S.D.N.Y. 2010) ("The statute of limitations for a fraud claim asserted under New York law is generally six years.").  Thus, even if this Court were to permit Plaintiffs to assert claims under Georgia, New York, and Texas law, there is no conceivable basis for allowing them to assert claims that accrued over six years before the commencement of this lawsuit (*i.e.*, before December 17, 2013).