# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARGUESS NOOHI and ROBERT BRYCE STEWART III, individually and on behalf of other members of the public similarly situated,<br>    Plaintiffs,<br><br>          v.<br><br>THE KRAFT HEINZ COMPANY and KRAFT HEINZ INGREDIENTS CORP.,<br>    Defendants. | CV 19-10658 DSF (SKx)<br><br>Order DENYING Defendants' Motion to Dismiss (Dkt. 21) |

      Defendants The Kraft Heinz Company and Kraft Heinz Ingredients Corp. move to dismiss the Second Amended Complaint (SAC) filed by Plaintiffs Narguess Noohi and Robert Bryce Stewart III. Dkt. 21 (Mot.). Plaintiffs oppose. Dkt. 23 (Opp'n). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the motion is DENIED.

## I. BACKGROUND

      Defendants sell drink products throughout the United States under the brand name "Crystal Light" that are advertised as containing no artificial flavors, when in fact they contain synthetic DL-Malic Acid. Dkt. 20 (SAC) ¶¶ 9, 10. Due to Defendants' allegedly false and misleading claim that Crystal Light products contain no artificial flavors, Plaintiffs have been misled into purchasing products they

would not have otherwise purchased.  Id. ¶¶ 16, 18.  Therefore, Plaintiffs brought claims on behalf of themselves and others similarly situated for 1) violation of the California False Advertising Act, Cal. Bus. & Prof. Code §§ 17500 *et seq*.; 2) violation of California's Unfair Business Practices Act (UCL), Cal. Bus. & Prof. Code §§ 17200 *et seq*.; 3) fraud; 4) unjust enrichment; 5) negligent misrepresentation; 6) breach of express warranty; 7) violation of the New York General Business Law Sections 349, 350, and 350-a(1); 8) violation of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§ 17.46 *et seq*.; 9) violation of the Georgia Uniform Deceptive Trade Practices Act, OCGA §§ 10-1-372 *et seq*.; 10) violation of the Georgia Fair Business Practices Act, OCGA §§ 10-1-393 *et seq*.; and 11) violation of the California Consumer Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750 *et seq*.

## II. LEGAL STANDARD

Rule 12(b)(6) allows an attack on the pleadings for failure to state a claim on which relief can be granted.  "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Id. (quoting Twombly, 550 U.S. at 557) (alteration in original) (citation omitted).  A complaint must "state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  This means that the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.  There must be "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . and factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery

and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

### A. False or Misleading Statements

Each of Plaintiffs' claims relies on the allegation that Crystal Light's label indicating that it contains "no artificial flavors" is false or misleading. See SAC ¶¶ 85, 99, 104, 108, 113, 120, 125, 136, 147, 157, 169, 182, 191, 201, 205.[1] Defendants move to dismiss Plaintiffs' claims on the grounds that Plaintiffs have not adequately alleged that the statement "no artificial flavors" is false or misleading. Specifically, Defendants contend that Plaintiffs have not adequately alleged that the malic acid in Crystal Light is "artificial" or a "flavor."

### 1. Artificial

FDA regulations specifically address malic acid, noting that there are two types: L-malic acid which "occurs naturally in various foods" and DL-malic acid which "is made commercially by hydration of fumaric acid or maleic acid." 21 C.F.R. § 184.1069(a). Plaintiffs allege that "[a]ll of the Products contain artificial DL-Malic Acid." SAC ¶ 14. As additional factual support, Plaintiffs allege that Defendants

---

[1] The parties agree that Plaintiffs' common-law claims for breach of express warranty, common-law fraud, negligent misrepresentation, and unjust enrichment rise or fall with the statutory consumer fraud claims. See Mot. at 12-14; Opp'n at 16-17; Dkt. 24 (Reply) at 2 n.1.

"intentionally used artificial DL-Malic Acid because it was likely cheaper and/or it more accurately resembled natural flavors than Citric Acid or other acids." Id. ¶ 32; see also id. ¶ 63 (Defendants "chose to include DL-Malic Acid because it was cheaper for Defendants than using natural L-Malic Acid and because they did not believe their customers were educated enough to know the difference"). Defendants contend these allegations amount to nothing more than speculation, which does not move the allegations across the line from "mere possibility" to plausibility. Mot. at 8. The Court disagrees. Plaintiffs may be speculating as to *why* Defendants use DL-Malic Acid, but they allege unequivocally that the Defendants do in fact use DL-Malic Acid. See, e.g., SAC ¶ 33.

The court in Branca v. Bai Brands, LLC, No. 3:18-cv-00757-BEN-KSC, 2019 WL 1082562 (S.D. Cal. Mar. 7, 2019) rejected a similar argument, finding it to be sufficient for the plaintiff to allege that "Defendants use an artificial petrochemical, d-1-malic acid in their Products" and to "discuss[] with particularity how artificial malic acid is created, is used in beverage products like Bai, and why Defendants use d–1–malic acid in place of natural malic acid." Id. at *3 (internal quotation marks omitted). The court noted that the plaintiff's "assumption as to the type of malic acid contained in Defendants' Products ultimately may be incorrect," but at the pleading stage the allegations must be accepted as true. Id. Other district courts have come to similar conclusions. See, e.g., Marotto v. Kellogg Co., No. 18 CIV. 3545 (AKH), 2018 WL 10667923, at *7 (S.D.N.Y. Nov. 29, 2018) (finding it sufficient that "Plaintiff distinguishes the natural and artificial forms of the ingredients and alleges that the Product contains the latter form"); Allred v. Kellogg Co., No. 17-CV-1354-AJB-BLM, 2018 WL 1158885, at *2 (S.D. Cal. Feb. 23, 2018) (concluding that allegations "discuss[ing] the process to create artificial malic acid and . . . defendants['] use the artificial version of malic acid, 'd-l-malic acid,' in the product" was sufficient at the motion to dismiss stage because "the allegation's truthfulness is a summary judgment hurdle").

Defendants seek to impose a requirement that Plaintiffs explain "*how* they discovered that the malic acid in Crystal Light is 'artificial.'"

Reply at 4. Certainly, had Plaintiffs included the results of their testing in the SAC,[2] their factual allegations would have been even stronger. See, e.g., Augustine v. Talking Rain Beverage Co., Inc., 386 F. Supp. 3d 1317, 1326 (S.D. Cal. 2019) (finding allegations that "the malic acid used in the Products is not the natural form of the L-malic acid" are plausible where "Plaintiffs have tested the Product and identified the malic acid used in the beverages as the synthetic industrial flavoring chemical called d-1 malic acid"); Morris v. Mott's LLP, No. SACV 18-01799 AG (ADSx), 2019 WL 948750, at *3 (C.D. Cal. Feb. 26, 2019) ("Plaintiffs connect these more generic allegations to Defendant's snack products specifically by alleging that Defendant's snacks test positive for d-l malic acid"). But failing to include such allegations is not fatal. Rather, the remedy for filing a lawsuit "without any idea as to its veracity . . . would lie in Rule 11," not Rule 12. See Allred, 2018 WL 1158885, at *1.

Defendants cite three district court cases that they contend require a different result. In Figy v. Frito-Lay N. Am., Inc., 67 F. Supp. 3d 1075 (N.D. Cal. 2014), "Plaintiffs' FAC provide[d] no detail whatsoever about how or why the offending ingredients are unnatural." Id. at 1090. Here, Plaintiffs have explained in detail how DL-malic acid is unnatural. Similarly, in Osborne v. Kraft Foods Group, Inc., No. 15-cv-02653-VC (N.D. Cal. Oct. 15, 2015), the complaint did not "specify whether all citric acid is unnatural or some types of citric acid is unnatural" or "what type of citric acid Kraft uses in its Capri Sun drinks." Dkt. 22-1 at 5-6.[3] Here, Plaintiffs have explained the two types of malic acid and alleged that the artificial malic acid is used in Crystal Light. Finally, in Tarzian v. Kraft Heinz Foods Co., No. 18 C 7148, 2019 WL 5064732 (N.D. Ill. Oct. 9, 2019), the court dismissed plaintiff's state law fraud claims, finding that the allegations that

---

[2] Plaintiffs now state that they hired an expert to test the product and the expert identified the presence of DL-malic acid. Opp'n at 8-9 & Ex. 1.

[3] The Court GRANTS Defendants' unopposed request for judicial notice (Dkt. 22) of the hearing transcript and order from the Osborne case. Fed. R. Evid. 201(b).

5

"Capri Sun contains industrially manufactured citric acid, and industrial citric acid is artificial because it is usually produced through the industrial fermentation process" and that "it is more economically viable to produce citric acid for industrial use through this fermentation process" "are insufficient to link fermented citric acid to that used in Capri Sun." Id. at *1, *4. There, the plaintiff had not alleged that Capri Sun contained artificial citric acid. Rather, it said that industrial citric acid is "usually" artificial because it is more economically viable. Here, Plaintiffs have explicitly alleged that Crystal Light contains artificial malic acid. See, e.g., SAC ¶¶ 10, 14.

Plaintiff has adequately alleged that the malic acid used in Crystal Light is artificial.

### 2. Flavor

As relevant here, product labels that contain "any direct or indirect representations with respect to the [product's] primary recognizable flavor(s)" must contain the word "artificial" or the phrase "artificially flavored" where "the food contains any artificial flavor which simulates, resembles or reinforces the characterizing flavor." 21 C.F.R. § 101.22(i)(2). The FDA regulations acknowledge that malic acid can be used as a flavor enhancer, a flavoring agent and adjuvant, and a pH control agent. 21 C.F.R. § 184.1069(c).[4] "An ingredient is classified as an artificial flavor based on its function in a product, not its impact on taste." Clark v. Hershey Co., No. 18-CV-06113 WHA, 2019 WL 2288041, at *2 (N.D. Cal. May 29, 2019).

---

[4] "Flavoring agents and adjuvants" are defined as "[s]ubstances added to impart or help impart a taste or aroma in food" while "[f]lavor enhancers" are "[s]ubstances added to supplement, enhance, or modify the original taste and/or aroma of a food, without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11), (12). While an ingredient list need only describe flavoring agents and adjuvants as "natural flavor" or "artificial flavor," 21 C.F.R. § 101.22(h)(1), flavor enhancers "must be declared in the ingredient list by their common or usual names," FDA, Food Labeling; Declaration of Ingredients, 56 Fed. Reg. 28592, 28598 (June 21, 1991).

6

Here, Plaintiffs allege that "Defendants include DL-Malic Acid to help make their products taste tart and fruity." SAC ¶ 31; see also id. ¶ 25 ("The ***sugar to acid ratio*** has a ***great impact*** on the perceived sweetness and tartness of fruit juices, as well as the flavor perception and balance, and overall consumer acceptability."), ¶ 42 ("Defendants flavors depend upon a ratio of sugar and DL-Malic Acid"), ¶ 46 ("the flavor of the Products . . . [is] an artificial combination of sugar and DL-Malic Acid"), ¶ 53 ("The Products' fruit flavors containing DL-Malic Acid resemble the natural characterizing fruity flavors Defendants claims are in their products"). Defendants contend that "[f]ar from establishing that Kraft Heinz uses malic acid as a flavoring agent, the allegations of the complaint actually suggest that Kraft Heinz uses malic acid as a "flavor enhancer." Mot. at 10. Specifically, "Plaintiffs' allegations establish that malic acid 'enhances' and 'modifies' the *other* characteristic fruit flavors present in each variety of Crystal Light, which makes it a textbook example of a flavor enhancer." Id. at 11.

District courts to have considered whether a plaintiff has adequately alleged that malic acid acts as a flavoring agent, flavor enhancer, or a pH control agent in a particular product have concluded that the issue was a factual dispute not properly resolved at the motion to dismiss stage. See, e.g., Branca, 2019 WL 1082562, at *8 (whether "the malic acid in their Products functions exclusively as a pH control agent and not as a flavor" is "inappropriate for determination on a motion to dismiss" (quoting Ivie v. Kraft Foods Glob., Inc., No. C-12-02554-RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013))); Sims v. Campbell Soup Co., No. EDCV 18-668 PSG (SPx), 2018 WL 7568640, at *6 (C.D. Cal. Sept. 24, 2018) (declining to conclude at the motion to dismiss stage that d-1 malic acid was not functioning as artificial flavor and collecting cases reaching the same conclusion); Allred v. Frito-Lay N. Am., Inc., No. 17-CV-1345 JLS (BGS), 2019 WL 1040018, at *5 (S.D. Cal. Mar. 5, 2019) ("Although it appears, even from Plaintiffs' exhibits, that Defendants' argument that malic acid is a flavor enhancer may have some validity," it remains "a factual determination . . . that would be inappropriately resolved on a motion to dismiss" (alteration in original)); Allred v. Frito-Lay N. Am., Inc., No. 17-CV-1345 JLS (BGS),

7

2018 WL 1185227, at *5 (S.D. Cal. Mar. 7, 2018) ("The distinction between an artificial flavor that 'simulates, resembles or reinforces' the characterizing flavor, 21 C.F.R. § 101.22(i)(2), and a 'flavor enhancer' that does not impart its own taste, 21 C.F.R. § 170.3(o)(11), in this instance is a factual determination. Whether malic acid falls into one of these categories is also a factual determination that would be inappropriately resolved on a motion to dismiss."); see also Clark v. Hershey Co., No. 18-CV-06113 WHA, 2019 WL 2288041, at *3 (N.D. Cal. May 29, 2019) (denying summary judgment and holding "[t]here is a genuine dispute as to whether malic acid acts as a flavoring agent in the [defendant's] products"); Gitson v. Trader Joe's Co., No. 13-CV-01333-WHO, 2014 WL 1048640, at *4 (N.D. Cal. Mar. 14, 2014) ("whether sodium citrate, citric acid, and tocopherol function as artificial flavors, chemical preservatives, or both, is inappropriate to determine at this stage of the litigation"). The Court agrees that whether the malic acid in Crystal Light acts as a flavor or flavor enhancer is a factual dispute that cannot be resolved at this stage.[5]

Therefore, Plaintiff has adequately alleged that the malic acid used in Crystal Light acts as a flavor, and not just a flavoring agent.

## B.     Common Law Claims

Defendants additionally contend that Plaintiffs' negligent misrepresentation and common-law fraud claims fail because Plaintiffs

---

[5] In fact, the parties' briefing highlights one facet of this factual dispute. Plaintiff apparently believes that "[t]he issue is not whether Malic Acid itself is a flavor or not" because malic acid imparts flavor based on a product's sugar to acid ratio. See Opp'n at 10; id. at 11 ("chemical combinations of acids and sugars . . . create the unique taste sensations of sweetness and sourness that are the specific characterizing fruit flavors of Defendants' products"). According to Defendants, Plaintiffs' allegations "conflate[] taste sensations, such as sour and sweet, with the 'characterizing flavors' – such as cherry, kiwi, and lime – present in Crystal Light." Reply at 8. Defendants appear to assume that if the malic acid only "impacts the tartness of the characterizing flavor" it does not "'resemble[]' that flavor in any respect." Mot. at 12.

8

have not alleged with particularity that Defendants intended to induce reliance. Mot. at 13. However, intent "may be alleged generally." Fed. R. Civ. P. 9(b). Here, Plaintiffs allege that "Defendants, through their employees, did know that DL-Malic Acid was not naturally occurring and would fundamentally alter any natural combination of sugar and L-Malic Acid in their products, but chose to include DL-Malic Acid because it was cheaper for Defendants than using natural L-Malic Acid and because they did not believe their customers were educated enough to know the difference." SAC ¶ 63. Plaintiffs further allege that "[a]t the time Defendants made the statements to Plaintiff, Defendants intended to induce Plaintiffs to purchase the Products." Id. ¶ 115; see also ¶ 131 ("The misrepresentations and/or omissions made by Defendants . . . were intended to induce and actually induced Plaintiffs and the Class and Sub-Classes' Members to purchase the Products."). This is sufficient at the pleading stage.

## C. Class Issues

### 1. Personal Jurisdiction

Defendants contend that the Court does not have personal jurisdiction over them "with respect to the claims of putative class members outside of California." Mot. at 14. In Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773 (2017), the Supreme Court held that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the product] in California – and allegedly sustained the same injuries as did the nonresidents – does not allow the State to assert specific jurisdiction over the nonresidents' claims." Id. at 1781. Plaintiffs contend that this rule does not apply to nonresident putative class members. Opp'n at 17.

The Ninth Circuit has not yet spoken on whether Bristol-Myers applies to a class action in which a plaintiff injured in the forum state seeks to represent a nationwide class of plaintiffs, not all of whom were injured in that state. The D.C. Circuit has held that it was "premature" to consider the issue on a motion to dismiss because "prior

9

to class certification putative class members are not parties to the action." Molock v. Whole Foods Mkt. Grp., Inc., 952 F.3d 293, 296 (D.C. Cir. 2020); see also Cruson v. Jackson Nat'l Life Ins. Co., 954 F.3d 240, 250 (5th Cir. 2020) (a personal jurisdiction defense is not "available" at the motion to dismiss stage because non-resident putative class members are not before the court until after a class is certified). The Court agrees.

Pilgrim v. Gen. Motors Co., 408 F. Supp. 3d 1160 (C.D. Cal. 2019), Mot. at 15-16 is clearly distinguishable. There the court considered whether it had personal jurisdiction over non-resident named plaintiffs, not over unnamed putative class members. Id. at 1167 ("the issue in this case is whether *Bristol-Myers* applies to the forty ***out-of-state named plaintiffs*** bringing claims that have no connection to California and are based on the laws of twenty different states" (emphasis added)). The same is true for Andrade-Heymsfield v. Danone US, Inc., No. 19-CV-589-CAB-WVG, 2019 WL 3817948 (S.D. Cal. Aug. 14, 2019. See id. at *3-*4 (court does not have personal jurisdiction over claims brought by named plaintiff who "is a New York resident who purchased and consumed the Coconut Milk in New York"). To the extent the court in Carpenter v. PetSmart, Inc., No. 19-CV-1731-CAB-LL, 2020 WL 996947 (S.D. Cal. Mar. 2, 2020) held that a personal jurisdiction defense can be asserted as to unnamed members of a putative nationwide class at the motion to dismiss stage, id. at *6, this Court disagrees as it relates to this case.[6]

---

[6] Additionally, in Carpenter it was not clear that the $5,000,000 amount in controversy requirement would be satisfied without the non-California class claims, and therefore the court was concerned that it "lack[ed] CAFA jurisdiction and must dismiss this complaint in its entirety." 2020 WL 996947, at *10. Here, the Court has no reason to believe that CAFA's $5,000,000 amount in controversy requirement would not be easily satisfied even if the class were limited to purchases of Crystal Light made in California. Therefore, the Court need not decide whether plaintiffs alleging CAFA jurisdiction can rely on the damages attributable to claims by putative

10

It is premature to determine whether the Court has personal jurisdiction over putative claims brought by putative class members who are not yet parties to this action.

### 2. Standing

Defendants ask the Court to "dismiss any claims on behalf of putative class members outside of the[] four states [where Plaintiffs purchased Crystal Light] for lack of standing." Mot. at 18. However, for the same reasons explained above, any putative common law claims based on the laws of states other than California, Georgia, Texas, and New York are not currently before the Court and therefore it is premature to consider whether Plaintiffs have standing to bring them.

Defendants contend that "[t]he Supreme Court and the Ninth Circuit have both held that district courts may 'address[] issues of standing before . . . address[ing] issues of class certification.'" Mot. at 10 n.6 (alterations in original) (quoting Easter v. Am. W. Fin., 381 F.3d 948, 962 (9th Cir. 2004)). The Court agrees that on a motion to dismiss it must consider whether named plaintiffs have standing to assert the claims brought in the complaint, such as whether a given plaintiff actually purchased an offending product, or where there are statutory claims brought solely under another state's laws. For example, if one of the claims in the SAC was based on a Nevada consumer fraud statute, that claim could be subject to dismissal prior to class certification. But that is not the challenge here.[7] Rather, Defendants seek to dismiss claims that are not currently a part of this action, but that they

---

class members that may ultimately be dismissed or excluded from the certified class.

[7] Defendants' contention that "[t]he fact that Plaintiffs do not assert any claims under the consumer protection statutes of other states is irrelevant, as Article III standing requirements apply with equal force to both statutory and common-law claims," Mot. at 19, misses the point. Prior to class certification, the common law claims are brought only under the laws applicable to Plaintiffs.

11

anticipate may become a part of this action if a nationwide class is certified. It is premature for the Court to make that determination.

## IV. CONCLUSION

Defendants' motion to dismiss is DENIED.

IT IS SO ORDERED.

Date: July 20, 2020

_____
Dale S. Fischer
United States District Judge