**Todd M. Friedman (216752)**
**Meghan E. George (274525)**
**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
**21550 Oxnard Street, Suite 780**
**Woodland Hills, CA 91367**
**Phone: 323-306-4234**
**Fax: 866-633-0228**
**tfriedman@attorneysforconsumers.com**
**mgeorge@attorneysforconsumers.com**

**Reuben D. Nathan, Esq. (208436)**
**NATHAN & ASSOCIATES, APC**
**2901 W. Coast Hwy., Suite 200**
**Newport Beach, CA 92663**
**Phone: 949-270-2798**
**rnathan@nathanlawpractice.com**

**Attorneys for Plaintiffs**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NARGUESS NOOHI and ROBERT BRYCE STEWART III, individually, and on behalf of other members of the general public similarly situated, | Case No. 2:19-cv-10658-DSF-SK |
| Plaintiffs, | **THIRD AMENDED CLASS ACTION COMPLAINT** |
| vs. | (1) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17500, *et seq*.) and |
| THE KRAFT HEINZ COMPANY and KRAFT HEINZ INGREDIENTS CORP., | (2) Violation of Unfair Competition Law (Cal. Business & Professions Code §§ 17200, *et seq*.) |
| Defendants. | (3) Common Law Fraud |
| | (4) Unjust Enrichment |
| | (5) Negligent Misrepresentation |
| | (6) Breach of Express Warranty |
| | (7) Violation of New York GBL § 349. |
| | (8) Violation of New York GBL § 350. |
| | (9) Violation of New York GBL § 350(a)(1). |
| | (10) Violation of Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code §§ 17.46, *et seq.*) |
| | (11) Violation of Georgia Uniform Deceptive Trade Practices Act |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(OCGA §§ 10-1-372, *et seq.*)
(12)  Violation of Georgia Uniform
Deceptive Trade Practices Act
(OCGA § 10-1-393, *et seq.*)
(13)  Violation of the Consumer Legal
Remedies Act (Cal. Civ. Code
§ 1750 *et seq.*)

**Jury Trial Demanded**

Plaintiffs Narguess Noohi ("Plaintiff Noohi") and Robert Bryce Stewart III ("Plaintiff Stewart"), individually and on behalf of all other members of the public similarly situated, allege as follows:

## PRELIMINARY STATEMENTS

1.     This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of the California Unfair Competition Law (Cal. Business & Professions Code   §§ 17500, *et seq.*), the California Unfair Competition Law (Cal. Business & Professions Code   §§ 17200, *et seq.)*, common law fraud, unjust enrichment, negligent misrepresentation, breach of express warranty, the New York General Business Law ("GBL")  § 349, the New York GBL § 350, the New York GBL § 350(a)(1), the Texas Deceptive Trade Practices Act (Tex. Bus. & Com. Code § 17.46, *et seq.*), the Georgia Uniform Deceptive Trade Practices Act (OCGA § 10-1-372, *et seq.*), the Georgia Uniform Deceptive Trade Practices Act (OCGA § 10-1-393, *et seq.*), and the Consumer Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*) resulting from the illegal actions of Defendants, in intentionally labeling their drink products with false and misleading claims that they contain no artificial flavors, when Defendants' products contain artificial Malic Acid. Malic Acid is a common food additive associated with tart and sour flavors. Plaintiffs allege as follows upon personal knowledge as to themselves and their own

acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest or costs and is a class action in which members of the class are citizens of a State different from the Defendants.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, and Defendant does business, *inter alia*, in the Central District of California.

## PARTIES

4.     Plaintiff Noohi is an individual who was at all relevant times residing in Los Angeles, California.

5.     Plaintiff Stewart is an individual who was a resident of Los Angeles, California and Atlanta, Georgia, and now resides in New York.

6.     On information and belief, Defendant THE KRAFT HEINZ COMPANY ("KHC") is a Delaware corporation whose principal places of business are located in Chicago, Illinois and Pittsburgh, Pennsylvania.

7.     On information and belief, Defendant KRAFT HEINZ INGREDIENTS CORP. ("KHI") is a Delaware corporation whose principal places of business are located in Chicago, Illinois and Pittsburgh, Pennsylvania.

8.     At all times relevant hereto, Defendants were engaged in the manufacturing, marketing, and sale of drink products.

## **FACTS COMMON TO ALL COUNTS**

9.     Defendants manufacture, advertise, market, sell, and distribute drink products throughout California, New York, Georgia, Texas, and the United States under the brand name "Crystal Light."

10.    During the Class Period the following list of products (the "Products") were advertised as containing no artificial flavors when they in fact contained synthetic DL-Malic Acid:

    a.     Mango Passion Fruit Crystal Light Liquid;

    b.     Blueberry Raspberry Crystal Light Liquid;

    c.     Berry Sangria Crystal Light Liquid;

    d.     Black Cherry Lime Crystal Light Liquid;

    e.     Strawberry Kiwi Crystal Light Pure;

    f.     Grape Crystal Light Pure;

    g.     Tropical Blend Crystal Light Pure;

    h.     Peach Mango Green Tea Crystal Light;

11.     During the Class Period Plaintiffs purchased many of the Products.

12.     Plaintiff Noohi's most recent purchase was during or about September 2019.

13.     Plaintiff Stewart has purchased the Products between 2017 and 2020. Plaintiff Stewart purchased the Products from local grocery stores in and around Los Angeles, California, New York, New York, Atlanta, Georgia, and other neighboring cities and towns. Plaintiff Stewart also purchased some of the Products while visiting the State of Texas.

14.     All of the Products contain artificial DL-Malic Acid; therefore, the fruit flavors of Defendants' products are at least partially artificial, but Defendants intentionally advertise and label the Products as containing no artificial flavors.

15.     Persons, like Plaintiffs herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the inclusion of artificial ingredients in those products.

16.     By making false and misleading claims about the ingredients contained in their products Defendants impaired Plaintiffs' ability to choose the type and quality of products they chose to buy.

17.     Therefore, Plaintiffs have been deprived of their legally-protected interest to obtain true and accurate information about their consumer products as required by California, New York, Georgia, Texas, and Federal law.

18.     As a result, Plaintiffs have been misled into purchasing products they would not have otherwise purchased.

19.     A flavor is a substance the function of which is to impart taste. See 21 C.F.R. § 101.22(a)(1) and (a)(3).

20.     Taste is the combination of sensations arising from specialized receptor cells located in the mouth. Gary Reineccius, Flavor Chemistry and Technology 2nd edition, § 1.2 (2005). Taste can be defined as sensations of sweet, sour, salty, bitter, and umami; however, limiting taste to five categories suggests that taste is simple, which is not true. *Id.* For example, the taste of sour contains the sourness of vinegar (Acetic Acid), sour milk (Lactic Acid), lemons (Citric Acid), apples (Malic Acid), and wines (Tartaric Acid). *Id.* Each of those acids is responsible for unique sensory characteristics of sourness. *Id.*

21.     Fruit flavors are the sum of the interaction between sugars, acids, lipids, and a blend of volatile compounds. Hui, *et al*., Handbook of Fruit and Vegetable Flavors, Ch. 36, p. 693 (2010). The content of sugars, mainly glucose and fructose, and their ratio to the content of acids, such as citric and malic acid, determine the sweetness of fruits. *Id.*

22.     Malic Acid ($C_4H_6O_5$) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid. Malic Acid has two isomers, or different arrangements of atoms in the molecule, L-Malic Acid, and D-Malic Acid. 21 C.F.R. § 184.1069. L-

Malic Acid **occurs naturally** in various fruits. *Id.* (Emphasis added.) D-Malic Acid **does not occur naturally**. *Id.* (Emphasis added.) D-Malic Acid is most commonly found in a Racemic Mixture, DL-Malic Acid, which is commercially made from petroleum products.

23.     An isomer is a molecule sharing the same atomic make up as another but differing in structural arrangements. Dan Chong and Johnathan Mooney, *Chirality and Stereoisomers*, (2019).[1] Stereoisomers contain different types of isomers each with distinct characteristics that separate each other as different chemical entities with different chemical properties. *Id.* Stereoisomers differ from each other by spatial arrangement, meaning different atomic particles and molecules are situated differently in any three-dimensional direction by even one degree. *Id.* Enantiomers are a type of stereoisomer that are mirror-images and cannot be superimposed. *Id.* It can be helpful to think of enantiomers as right-hand and left-hand versions of the same molecular formula. D-Malic Acid and L-Malic Acid are enantiomers.

24.     The following are skeletal formulas of the enantiomers D-Malic Acid and L-Malic Acid:

---

[1]

https://chem.libretexts.org/Bookshelves/Organic_Chemistry/Supplemental_Modules_(Organic_Chemistry)/Chirality/Chirality_and_Stereoisomers.

L–Malic acid

D-Malic acid [2]

25.     Sweetness and tartness are important contributors to the states and flavor perception of fruit juices. Hui, *et al.*, Handbook of Fruit and Vegetable Flavors, Ch. 24, p. 455 (2010). Organic acids such as Malic Acid in apples and pears, and Tartaric and Malic Acid in grapes, contribute to the tartness of the juices. *Id*. The **sugar to acid ratio** has a **great impact** on the perceived sweetness and tartness of fruit juices, as well as the flavor perception and balance, and overall consumer acceptability. *Id* (emphasis added).

26.     Malic Acid is a key organic acid in the flavors of many fruits as is evidenced by its high concentration in those fruits. The following are charts depicting the concentration of Malic Acid in the characterizing fruit flavors of Defendants' products:

---

[2] The only structural difference between D-Malic Acid and L-Malic Acid is that one Hydroxide (OH⁻) is attached to each different enantiomer at a different angle. The solid cone and the dashed-line cone represent the stereochemical differences. Straight lines represent bonds on the same plane as the paper, solid cones represent bonds pointed towards the observer, and dashed-line cones represent bonds pointed away from the observer.

**Table 8.7.** Concentrations of malic acid (MA; mg g⁻¹ FW) in the flesh of some ripe temperate fruits and some leaves and roots. For leaves and roots, nitrate and ammonium refer to the form of nitrogen on which the plants were grown.

| Fruits | MA level | Reference |
|---|---|---|
| Apple | 4.8–14.7 | Fuleki *et al.* 1994 |
| Blackberry | 0.5–6.0 | Wrolstad *et al.* 1980 |
| Blueberry (highbush) | 0.47–0.50 | Markakis *et al.* 1963 |
| Blueberry (lowbush) | 5.0 | Kalt and McDonald 1996 |
| Cherry (sweet) | 5.0–8.5 | Girard and Kopp 1998 |
| Cherry (sweet) | 8.5–10 | Kelebek and Selli 2011 |
| Cherry (sweet) | 6.3–14 | Ballistreri *et al.* 2013 |
| Citrus (orange) | 0.6–2.0 | Ting and Attaway 1971 |
| Citrus (tangerine) | 1.8–2.1 | Ting and Attaway 1971 |
| Citrus (grapefruit) | 0.4–0.6 | Ting and Attaway 1971 |
| Citrus (lemon) | 1.7–2.6 | Ting and Attaway 1971 |
| Citrus (lime) | 2.0 | Ting and Attaway 1971 |
| Currant (black) | 0.7–1.7 | Rodriguez *et al.* 1992 |
| Currant (red) | 0.5–2.1 | Rodriguez *et al.* 1992 |
| Currant (red) | 0.3–0.5 | Nour *et al.* 2011 |
| Currant (white) | 0.4 | Rodriguez *et al.* 1992 |
| Peach | 8.0 | Byrne *et al.* 1991 |
| Peach | 2.0–7.0 | Dirlewanger *et al.* 1999 |
| Pear | 1.6–2.0 | Drake and Eisele 1999 |
| Plum (damson) | 7.0 | García-Mariño *et al.* 2008 |
| Plum (European) | 20.0 | Lombardi-Boccia *et al.* 2004 |
| Plum (Japanese) | 7.6–15.9 | Robertson *et al.* 1992 |
| Plum (Japanese) | 8.0–10.0 | Singh *et al.* 2009 |
| Raspberry | 0.14–1.7 | Rodriguez *et al.* 1992 |
| Strawberry | 1.5–2.8 | Moing *et al.* 2001 |
| **Leaves** | | |
| Tobacco (nitrate) | 11.0 | Pucher and Vickery 1949 |
| Tobacco (ammonium) | 0.8 | Pucher and Vickery 1949 |
| Barley (nitrate) | 4.3 | Kandlbinder *et al.* 1997 |
| Barley (ammonium) | 0.3 | Kandlbinder *et al.* 1997 |
| **Roots** | | |
| Barley (nitrate) | <0.13 | Kandlbinder *et al.* 1997 |
| Barley (ammonium) | <0.13 | Kandlbinder *et al.* 1997 |

[3]

///
///
///
///
///
///
///
///
///
///

---

[3] Robert Walker and Franco Famiani, *Horticultural Reviews, Organic Acids in Fruits*, (Vol. 45, Ch. 8 2018).

Table I.  Acids Naturally Present in Fruits

| Fruit | Predominant Acid | Secondary Acids |
|---|---|---|
| Apple | Malic Acid (95%*) | Tartaric Acid, Fumaric Acid |
| Apricot | Malic Acid (70%*) | Citric Acid, Tartaric Acid |
| Cherry | Malic Acid (94%*) | Tartaric Acid |
| Grape | Malic Acid (60%*) | Tartaric Acid |
| Grapefruit | Citric Acid | Malic Acid |
| Guava | Citric Acid | Malic Acid |
| Lime, Lemon | Citric Acid | Malic Acid |
| Mango | Citric Acid | Malic Acid, Tartaric Acid |
| Orange | Citric Acid | Malic Acid |
| Peach | Malic Acid (73%*) | Citric Acid |
| Pear | Malic Acid (77%*) | Citric Acid |
| Pineapple | Citric Acid | Malic Acid |
| Raspberry | Citric Acid | Malic Acid, Tartaric Acid |
| Strawberry | Citric Acid | Malic Acid, Tartaric Acid |
| Tamarind | Tartaric Acid | Citric Acid, Malic Acid |
| Watermelon | Malic Acid (99%*) | Fumaric Acid |

*% of the total acid in the fruit

For more information:  Bartek Ingredients Inc.   •   421 Seaman St.   •   Stoney Creek, Ontario  L8E 3J4   •   Canada
Tel:  (905) 662-3292   •   (905) 662-1127   •   Order desk:  1-800-263-4165   •   Fax:  (905) 662-8849
www.bartek.on.ca   •   sales@bartek.on.ca

27.     In passion fruits a mixture of acids including Malic Acid are responsible for the tartness of the fruit's juice. Hui, *et al*., Handbook of Fruit and Vegetable Flavors, Ch. 18, p. 347 (2010).

28.     Adding DL-Malic Acid to a fruit juice solution containing L-Malic Acid would change the concentration of Malic Acid in the solution and the ratio of total Malic Acid to sugars in that solution.

29.     Natural sugars—like glucose, fructose, and sucrose—combined with artificial DL-Malic Acid in a ratio engineered to resemble the natural chemical combination of sugar and L-Malic Acid found in the characterizing fruits of

---

[4] Daniel Sortwell and Anne Woo, *Improving the Flavor of Fruit Products with Acidulants*, p. 1 (1996), http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.548.4424&rep=rep1&type=pdf

Defendants' products does not equal the natural flavor of those characterizing fruits. Likewise, a natural chemical combination of sugar and L-Malic Acid altered by adding artificial DL-Malic Acid is no longer the original chemical combination of sugar and L-Malic Acid and therefore no longer the natural flavor.

30.     Irrespective of the purpose for which Defendant claims DL-Malic Acid was added to its products, DL-Malic Acid has the same effect on the fruit flavors. Defendants do not have the ability to command DL-Malic Acid to only perform certain functions, and Defendants should not be allowed to decide which Malic Acid constitutes flavor and which Malic Acid constitutes only a flavor enhancer or pH balancer.

31.     Defendants include DL-Malic Acid to help make their products taste tart and fruity.

32.     Defendants had the option to add naturally extracted L-Malic Acid to their products, or to add a naturally manufactured acid such as Citric Acid to their products, but they instead intentionally used artificial DL-Malic Acid because it was likely cheaper and/or it more accurately resembled natural flavors than Citric Acid or other acids.

33.     To be clear, whatever Defendants' intentions were when including DL-Malic Acid in their fruit flavored products, Defendants' products do in fact contain

DL-Malic Acid, and the inclusion of DL-Malic Acid makes the characterizing fruit flavors of Defendants' products artificial fruit flavors.

34.     The Sherman Food, Drug, and Cosmetic Act ("SFDCA") incorporates all food additive regulations of the Federal Food, Drug, and Cosmetic Act. Cal. Health & Safety Code § 110100.

35.     Under the Federal Food, Drug, and Cosmetic Act ("FFDCA"), artificial flavor is defined as "any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R § 101.22(a)(1).

36.     New York's Pure Food and Drug Act § 71.05(a) provides that "[n]o person shall manufacture, produce, pack, possess, sell, offer for sale, deliver or give away any food, drug or cosmetic which is adulterated or misbranded.  New York's Pure Food and Drug Act § 71.05(c) states that "[a] food shall be deemed adulterated if the Department has determined the food to be adulterated or as set forth in the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §342)" and "[a] food shall be deemed misbranded in accordance with the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §343)."

37.     Texas' Food, Drug, and Cosmetics Act incorporates all food additive regulations of the Federal Food, Drug, and Cosmetic Act. TX Health & Safety §

431.244(a). Texas' Food, Drug, and Cosmetics Act prohibits the adulteration or misbranding of any food, drug, device, or cosmetic in commerce. TX Health & Safety § 431.021(b). Texas' Food, Drug, and Cosmetics Act provides that a food shall be deemed to be misbranded if its advertising is false or misleading in a material respect or its labeling is in violation of Section 411(b)(2) of the Federal Act. TX Health & Safety § 431.082(b).

38.     Georgia's Food Act food additive regulations conform to the definitions and standards promulgated under the Federal Food, Drug, and Cosmetics Act. GA. ST. § 26-2-35. Georgia's Food Act prohibits the adulteration or misbranding of any food. GA. ST. § 26-2-22.   Georgia's Food Act provides that a food shall be deems to be misbranded if its labeling is false or misleading in any particular. GA. ST. § 26-2-28(1).

39.     DL-Malic Acid is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

40.     A combination of sugar and DL-Malic Acid in a ratio resembling a fruit flavor cannot be derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

41.     Likewise, a combination of sugar, natural L-Malic Acid, and artificial DL-Malic Acid combined in a way to resemble the natural ratio of sugar and L-Malic Acid found in the characterizing fruits of Defendant's products cannot be derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

42.     A combination of sugars and artificial DL-Malic Acid engineered to resemble the natural ratio of sugars and natural L-Malic Acid that make up the natural flavor of the characterizing fruit of Defendants' products is not a natural flavor. Put more simply, the natural flavor of the fruits in controversy is heavily dependent on a specific ratio of sugar and L-Malic Acid, while Defendants flavors depend upon a ratio of sugar and DL-Malic Acid.

43.     Under the FFDCA, a flavor enhancer is a substance "added to supplement, enhance, or modify the original taste and or aroma of a food without imparting a characteristic taste or aroma of its own." 21 C.F.R. § 170.3(o)(11).

44.     Under the FFDCA, pH balancers are "substances added to change or maintain active acidity or basicity, including buffers, acids, alkalis, and neutralizing agents." 21 C.F.R. § 170.3(o)(23).

45.     DL-Malic Acid under other circumstances could function as a flavor enhancer or pH balancer, such as when Malic Acid is not a core component of the

natural flavor of the food. For example, Malic Acid added to vinegar (Acetic Acid) dishes like barbecue pork, coleslaw, or pickled eggs would most likely not fundamentally alter the underlying vinegar flavors.

46.    Under the circumstances in this case, artificial DL-Malic Acid fundamentally alters the original combination of sugar and natural L-Malic Acid core to fruit flavors, so that the flavor of the Products are no longer a natural combination of sugar and L-Malic Acid but instead are an artificial combination of sugar and DL-Malic Acid.

47.    Under the FFDCA, a primary flavor identified on the front of a food product label is referred to as a "characterizing flavor." 21 C.F.R. § 101.22.

48.    The FFDCA further defines a "characterizing flavor" as flavors identified by "…labeling, or advertising of a food [making] any direct or indirect representations with respect to the primary recognizable flavor, by word, vignette, e.g., depiction of a fruit or other means." 21 C.F.R. § 101.22(i).

49.    If the food products contain any artificial flavor that simulates, resembles or reinforces the characterizing flavor, the name of the characterizing flavor "shall be accompanied by the word(s) 'artificial' or 'artificially flavored'…e.g., 'artificial vanilla', 'artificially flavored strawberry', or 'grape artificially flavored.'" 21 C.F.R. § 101.22(i)(2).

50.     Under the FFDCA, a food is misbranded if its labeling is false or misleading in any particular, including if it contains any artificial flavoring, coloring, or chemical preservative, unless it bears labeling stating that fact. Cal. Health & Safety Code § 110660; Cal. Health & Safety Code § 110740.

51.     Under the FFDCA, a good is misbranded if its labeling is false or misleading in any particular.  21 U.S.C.A. § 343(a).

52.     The following are examples of the Products' labeling that explicitly violate the above cited regulations:

  

///
///
///
///
///
///
///
///
///



53.    The Products' fruit flavors containing DL-Malic Acid resemble the natural characterizing fruity flavors Defendants claims are in their products.

54.    Plaintiffs purchased Defendants' products because Defendants' packaging claims that their products do not contain artificial flavors.

55.    Plaintiffs would not have been able to understand that the Products contained artificial flavoring without an advanced understanding of organic chemistry and without performing chemical analyses on the Products.

56.    Furthermore, due to Defendants' intentional, deceitful practice of falsely labeling the Products as containing no artificial flavors, Plaintiffs could not have known that the Products contained artificial flavors.

57.    Plaintiffs were unaware that the Products contained artificial DL-Malic Acid when they purchased them.

58.    Plaintiffs and the members of the Class and Sub-Classes were deceived

into paying money for products they did not want because the Products were labeled as containing no artificial flavors.

59.     Worse than the lost money, Plaintiffs, the Class, and Sub-Classes were deprived of their protected interest to choose the foods and ingredients they ingest.

60.     Plaintiffs, the Class, and Sub-Classes members, are not, and should not be, required to chemically test the food products they purchase to know the true contents of those products.

61.     Defendants, and not Plaintiffs, the Class, or Sub-Classes, knew or should have known that the Products' express labeling stating "no artificial flavors" was false, deceptive, and misleading, and that Plaintiffs, the Class, and Sub-Classes' members would not be able to tell that the Products contained artificial DL-Malic Acid unless Defendants expressly told them, as required by law.

62.     Defendants employ professional chemists to create the chemical flavor formulas of Defendants' products. Therefore, Defendants, through their employees, knew or should have known that DL-Malic Acid is not naturally occurring, and that by adding DL-Malic Acid to its products, the natural flavoring, if any was ever actually added to the products, would be fundamentally changed.

63.     On information and belief, Defendants, through their employees, did know that DL-Malic Acid was not naturally occurring and would fundamentally alter any natural combination of sugar and L-Malic Acid in their products, but chose

to include DL-Malic Acid because it was cheaper for Defendants than using natural L-Malic Acid and because they did not believe their customers were educated enough to know the difference.

64.     As a result of Defendants' acts and omissions outlined above, Plaintiffs have suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

    a.    Lost money;

    b.    Wasting Plaintiffs' time; and

    c.    Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

65.      Plaintiffs bring this action on behalf of themselves and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of the original complaint until the date of class certification.

66.     Plaintiffs also bring this action on behalf of themselves and all others similarly situated, as a member of a proposed sub-class (the "California Sub-Class"), defined as follows:

> All persons within California who purchased the Products

within four years prior to the filing of the original
complaint until the date of class certification.

67.     Plaintiff Stewart also brings this action on behalf of himself and all
others similarly situated, as a member of a proposed sub-class (the "New York Sub-Class"), defined as follows:

All persons within New York who purchased the Products
within four years prior to the filing of the original
complaint until the date of class certification.

68.     Plaintiff Stewart also brings this action on behalf of himself and all
others similarly situated, as a member of a proposed sub-class (the "Texas Sub-Class"), defined as follows:

All persons within Texas who purchased the Products
within four years prior to the filing of the original
complaint until the date of class certification.

69.     Plaintiff Stewart also brings this action on behalf of himself and all
others similarly situated, as a member of a proposed sub-class (the "Georgia Sub-Class"), defined as follows:

All persons within Georgia who purchased the Products
within four years prior to the filing of the original
complaint until the date of class certification.

70.     Defendants, their employees and agents are excluded from the Class
and Sub-Classes. Plaintiffs do not know the number of members in the Class and
Sub-Classes, but believe the members number in the thousands, if not more. Thus,

this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

71.    The Class and Sub-Classes are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs are informed and believe and thereon allege that the Class and Sub-Classes include thousands, if not millions of members. Plaintiffs allege that the class members may be ascertained by records maintained by Defendants.

72.    This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Classes are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

73.    There are questions of law and fact common to the Class and Sub-Classes affecting the parties to be represented. The questions of law and fact common to the Class and Sub-Classes predominate over questions which may affect individual class members and include, but are not necessarily limited to, the following:

        a.    Whether Defendants intentionally, negligently, or recklessly disseminated false and misleading information by including the

statement "no artificial flavors" on the front of the Products' packaging;

b.      Whether the Class and Sub-Classes' members were informed of the artificial nature of the ingredients in the Products;

c.      Whether the Products contain artificial flavoring;

d.      Whether Defendants' conduct was unfair and deceptive;

e.      Whether Defendants unjustly enriched themselves as a result of the unlawful conduct alleged above;

f.      Whether the statement "No Artificial Flavors" is misleading or false;

g.      Whether there should be a tolling of the statute of limitations; and

h.      Whether the Class and Sub-Classes are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

74.      As residents of the United States and some of the above-mentioned states who purchased the Products in those states, Plaintiffs are asserting claims that are typical of the Class and Sub-Classes.

75.      Plaintiffs have no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Classes.

76.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and Sub-Classes. Plaintiffs have retained attorneys experienced in the prosecution of class actions.

77.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

78.     The prosecution of separate actions by individual members of the Class and Sub-Classes would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other class members not

parties to such adjudications or that would substantially impair or impede the ability of such non-party class members to protect their interests.

79.   Plaintiffs' claims and injuries are identical to the claims and injuries of all Class and Sub-Class members, because all claims and injuries of all Class and Sub-Class members are based on the same false labeling, the same addition of DL-Malic Acid to fruit flavored products, and the same legal theory. All allegations arise from the identical, false, affirmative written statements made by Defendants when they claimed the Products contained "No Artificial Flavors," when in reality the Products contained a combination of sugars and artificial DL-Malic Acid engineered to resemble the natural ratio of sugars and natural L-Malic Acid of the fruit flavors in controversy.

80.   Defendants have acted or refused to act in respect generally applicable to the Class and Sub-Classes thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Classes as a whole.

81.   The size and definition of the Class and Sub-Classes can be identified through records held by retailers carrying and reselling the Products, and by Defendants' own records.

## FIRST CAUSE OF ACTION
### Violation of the California False Advertising Act
### (Cal. Bus. & Prof. Code §§ 17500 *et seq.*)

82.   Plaintiffs incorporate all of the allegations and statements made in

paragraphs 1 through 81 above as if fully reiterated herein.

83.     Pursuant to California Business and Professions Code § 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading...or...to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

84.     The prohibition against false advertising in California Business and Professions Code § 17500, *et seq.*, extends to the use of false or misleading written statements.

85.     Defendants misled consumers by making misrepresentations and untrue statements about the Products, namely, Defendants sold the Products advertised to have "No Artificial Flavors" fully knowing the Products contained D-Malic Acid, and made false representations to Plaintiffs and other putative class members in order to solicit these transactions.

86.     Specifically, Defendants wrote on the packages of these Products that they contained "No Artificial Flavors".

87.     Defendants knew that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and

omissions in order to deceive reasonable consumers like Plaintiff and other Class Members.

88.    As a direct and proximate result of Defendants' misleading and false advertising, Plaintiffs and the other Class Members have suffered injury in fact and have lost money or property. Plaintiffs reasonably relied upon Defendants' representations regarding the Products, namely that they contained "No Artificial Flavors".  In reasonable reliance on Defendants' false advertisements, Plaintiffs and other Class Members purchased the Products.  In turn Plaintiffs and other Class Members ended up with drink products that turned out to actually be different than advertised, and therefore Plaintiffs and other Class Members have suffered injury in fact.

89.    Plaintiffs allege that these false and misleading written representations made by Defendants constitute a "scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised."

90.    Defendants advertised to Plaintiffs and other putative class members, through written representations and omissions made by Defendants and their employees, that the Products would contain "No Artificial Flavors".

91.    Defendants knew that the Products did in fact contain DL-Malic Acid, making their fruit flavors artificial.

92.    Thus, Defendants knowingly sold the Products to Plaintiffs and other putative class members that contained artificial flavors contrary to the Products packaging.

93.    The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Class Members in that Defendants persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiffs are entitled to preliminary and permanent injunctive relief ordering Defendants to cease their false advertising, as well as disgorgement and restitution to Plaintiffs and all Class Members of Defendants' revenues associated with their false advertising, or such portion of those revenues as the Court may find equitable.

**SECOND CAUSE OF ACTION**
**Violation of Unfair Business Practices Act**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq*.)**

94.    Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

95.    Actions for relief under the unfair competition law may be based on any business act or practice that is within the broad definition of the UCL. Such violations of the UCL occur as a result of unlawful, unfair or fraudulent business acts and practices. A plaintiff is required to provide evidence of a causal connection

between a defendant's business practices and the alleged harm—that is, evidence that the defendant's conduct caused or was likely to cause substantial injury. It is insufficient for a plaintiff to show merely that the defendant's conduct created a risk of harm. Furthermore, the "act or practice" aspect of the statutory definition of unfair competition covers any single act of misconduct, as well as ongoing misconduct.

## UNFAIR

96.     California Business & Professions Code § 17200 prohibits any "unfair ... business act or practice." Defendants' acts, omissions, misrepresentations, and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Plaintiffs reserve the right to allege further conduct which constitutes other unfair business acts or practices. Such conduct is ongoing and continues to this date.

97.     In order to satisfy the "unfair" prong of the UCL, a consumer must show that the injury: (1) is substantial; (2) is not outweighed by any countervailing

benefits to consumers or competition; and (3) is not one that consumers themselves could reasonably have avoided.

98.     Here, Defendant's' conduct has caused and continues to cause substantial injury to Plaintiffs and members of the Class and the California Sub-Class. Plaintiffs and members of the Class and the California Sub-Class have suffered injury in fact due to Defendants' decision to sell them misbranded drink products (Class Products). Thus, Defendants' conduct has caused substantial injury to Plaintiffs and the members of the Sub-Class.

99.     Moreover, Defendants' conduct as alleged herein solely benefits Defendants while providing no benefit of any kind to any consumer. Such deception utilized by Defendants convinced Plaintiffs and members of the Class and the California Sub-Class that the Products contained "No Artificial Flavors", in order to induce them to spend money on said Products.  In fact, Defendants, knowing that the Products by their objective terms contained artificial flavors, unfairly profited from their sale, in that Defendants knew that the expected benefit that Plaintiffs would receive from this feature is nonexistent, when this is typically never the case in situations involving flavors said to be contained within a product. Thus, the injury suffered by Plaintiffs and the members of the Class and the California Sub-Class is not outweighed by any countervailing benefits to consumers.

100.   Finally, the injury suffered by Plaintiffs and members of the Class and the California Sub-Class is not an injury that these consumers could reasonably have avoided.   After Defendants falsely represented that the Products would contain "No Artificial Flavors", the Plaintiff, the Class Members, and the California Sub-Class Members suffered injury in fact due to Defendants' sale of the Products to them. Defendants failed to take reasonable steps to inform Plaintiffs, the Class Members, and the California Sub-Class Members that the Products contained artificial flavors, including intentionally misbranding the Products by labeling them as containing "No Artificial Flavors". As such, Defendants took advantage of Defendants' position of perceived power in order to deceive Plaintiffs and the Class members into purchasing drink products containing artificial flavors. Therefore, the injury suffered by Plaintiffs and members of the Class and the California Sub-Class is not an injury which these consumers could reasonably have avoided.

101.   Thus, Defendants' conduct has violated the "unfair" prong of California Business & Professions Code § 17200.

## FRAUDULENT

102.   California Business & Professions Code § 17200 prohibits any "fraudulent ... business act or practice." In order to prevail under the "fraudulent" prong of the UCL, a consumer must allege that the fraudulent business practice

was likely to deceive members of the public.

103.   The test for "fraud" as contemplated by California Business and Professions Code § 17200 is whether the public is likely to be deceived. Unlike common law fraud, a § 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.

104.   Here, not only were Plaintiffs and the Class and California Sub-Class Members likely to be deceived, but these consumers were actually deceived by Defendants.   Such deception is evidenced by the fact that Plaintiffs agreed to purchase Class Products under the basic assumption that they contained "No Artificial Flavors" even though the Products contained DL-Malic Acid.  Plaintiffs' reliance upon Defendants' deceptive statements is reasonable due to the unequal bargaining powers of Defendants and Plaintiffs. For the same reason, it is likely that Defendants' fraudulent business practice would deceive other members of the public.

105.   As explained above, Defendants deceived Plaintiffs and the Class and California Sub-Class Members by representing the Products as containing "No Artificial Flavors" when the Products contained DL-Malic Acid.

106.   Thus, Defendant's conduct has violated the "fraudulent" prong of California Business & Professions Code § 17200.

///

# UNLAWFUL

107. California Business and Professions Code § 17200, *et seq*. prohibits "any unlawful…business act or practice."

108. As explained above, Defendants deceived Plaintiffs and the Class and California Sub-Class Members by representing the Products as containing "No Artificial Flavors", when the Products contained DL-Malic Acid.

109. Defendants used false advertising, marketing, and misrepresentations to induce Plaintiffs and the Class and California Sub-Class Members to purchase the Class Products, in violation of California Business and Professions Code § 17500, *et seq*. Had Defendants not falsely advertised, marketed or misrepresented the Products, Plaintiffs and the Class and California Sub-Class Members would not have purchased the Products. Defendants' conduct therefore caused and continues to cause economic harm to Plaintiffs and the Class and California Sub-Class Members.

110. These representations by Defendants are therefore an "unlawful" business practice or act under Business and Professions Code § 17200, *et seq*.

111. Defendants have thus engaged in unlawful, unfair, and fraudulent business acts entitling Plaintiff and the Class and California Sub-Class Members to judgment and equitable relief against Defendants, as set forth in the Prayer for Relief. Additionally, pursuant to Business and Professions Code § 17203, Plaintiff

and the Class and California Sub-Class Members seek an order requiring Defendants to immediately cease such acts of unlawful, unfair, and fraudulent business practices and requiring Defendants to correct their actions.

## THIRD CAUSE OF ACTION
### Common Law Fraud

112.   Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

113.   Through their false statements on the Products' packaging that the Products contained no artificial flavors, Defendants made false statements of material fact.

114.   At the time Defendants made their statements that the Products contained no artificial flavors to Plaintiffs, Defendants knew, or reasonably should have known, that the statements described above were false.

115.   At the time Defendants made the statements to Plaintiff, Defendants intended to induce Plaintiffs to purchase the Products.

116.   Plaintiffs relied upon the truth of the statements described above and purchased the Products, only to find that the Products contain artificial DL-Malic Acid.

117.   As a result of their reasonable reliance upon Defendants' false statements of material fact as set forth above, Plaintiffs and other members of the

Class and Sub-Classes have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products they did not want to buy, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

**FOURTH CAUSE OF ACTION**
**Unjust Enrichment**

118.   Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

119.   Plaintiffs conferred monetary benefits to Defendants by purchasing the Products.

120.   Defendants have been unjustly enriched by retaining the revenues derived from Plaintiffs' purchase of the Products based on the false statement that the Products contain no artificial flavors.

121.   Defendants' retention of the revenue they received from Plaintiffs, and the Class and Sub-Class Members is unjust and inequitable because Defendants' false statements caused injuries to Plaintiffs, and the Class and Sub-Class Members, because they would not have purchased the Products if they knew the Products contained artificial flavors.

122.   Defendants' unjust retention of the benefits conferred on it by

Plaintiffs, the Class, and the Sub-Classes entitles the Plaintiff, the Class, and the Sub-Classes to restitution of the money they paid to Defendants for the Products.

## FIFTH CAUSE OF ACTION
### Negligent Misrepresentation

123.    Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

124.    Plaintiffs bring this claim individually and on behalf of the proposed Class and Sub-Classes against Defendants.

125.    At all times, in purchasing the Products, Plaintiffs and the Class and Sub- Classes' Members believed prior to making purchases that they were purchasing Products that contain "no artificial flavors" as a result of Defendants' labeling and advertising.

126.    Plaintiffs and the Class and Sub-Classes' Members read and relied on Defendants' labeling on the front of the Products setting forth the representations and/or warranties prior making any purchase of the Products.

127.    Defendants had a duty to disclose and failed to disclose to Plaintiffs and the Class and Sub- Classes' Members that the Products contain artificial flavors.

128.    At the time Defendants made the false claim that its Products contained "no artificial flavors." Defendants knew or should have known that these representations were false or made them without knowledge of their truth or

veracity.

129.   In addition, Defendants omitted material facts about the Products by not disclosing on the labeling that the Products contained synthetic DL-malic acid.

130.   Plaintiffs and the Class and Sub- Classes' Members reasonably and justifiably relied on Defendants' statements or omissions and were deceived and induced into purchasing the Products.

131.   The misrepresentations and/or omissions made by Defendants, upon which Plaintiffs and the Class and Sub- Classes' Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and the Class and Sub- Classes' Members to purchase the Products. Defendants' representations that the Products contain "no artificial flavors" were material to the Plaintiffs and the Class and Sub- Classes' Members, and any reasonable consumer in their decision to purchase.

132.   Plaintiffs and the Class and Sub- Classes' Members would not have purchased the Products, if the true facts had been known regarding the falsity of Defendants' statements and representations.

133.   The negligent actions of Defendants caused damage to Plaintiffs and the Class and Sub- Classes' Members, who are entitled to damages and other legal and equitable relief as a result.

///

## SIXTH CAUSE OF ACTION
### Breach of Express Warranty

134.   Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

135.   Plaintiffs bring this claim individually and on behalf of the proposed Class and Sub-Classes against Defendants.

136.   Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, expressly warranted that the Products contain "no artificial flavors." Defendants intentionally highlight the language "no artificial flavors" by using a different color behind the lettering to prominently display the express warranty.

137.   The front labeling with the representations of fruits and leaves is also misleading and further creates an express warranty to support the representation that there is "no artificial flavors."

138.   Defendants' express warranties, and its affirmations of fact and promises made to Plaintiffs and the Class and Sub- Classes' Members regarding the Products, became part of the basis of the bargain between Defendants and Plaintiff, the Class, and Sub-Classes, which creates an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

139.   The Products do not conform to the express warranty that the Products contain "no artificial flavors" because they contain DL-Malic Acid.

140.   Furthermore, as alleged above Defendants actually knew that the products did not conform to the express warranty described above.

141.   As a direct and proximate cause of Defendants' breach of express warranty, Plaintiffs and the Class and Sub- Classes' Members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products' unnatural ingredients, and (b) the Products do not have the characteristics, uses, or benefits as promised.

## SEVENTH CAUSE OF ACTION
### Violation of New York GBL § 349

142.   Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

143.   New York General Business Law § 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state…"

144.   The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, New York Pure Food and Drug Act §71.05(a), and New York Pure Food and Drug Act §71.05 (c), and as such, Plaintiff Stewart and the New York Sub-Class Members seek monetary

damages and the entry of preliminary and permanent injunctive relief against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

145.   There is no adequate remedy at law.

146.   Defendants misleadingly, inaccurately, and deceptively presented its Products to consumers.

147.   Defendants' improper consumer-oriented conduct—including labeling and advertising the Products as not containing artificial flavoring —is misleading in a material way in that it, *inter alia*, induced Plaintiff Stewart and the New York Sub-Class Members to purchase Defendants' Products and to use the Products when they otherwise would not have.

148.   Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

149.   Plaintiff Stewart and the New York Sub-Class Members have been injured inasmuch as they paid for products that were—contrary to Defendants' representations—containing artificial flavors.   Accordingly, Plaintiff Stewart and the New York Sub-Class Members did not receive what they bargained and/or paid for.

150.   Defendants' advertising and product packaging and labeling induced Plaintiff Stewart and the New York Sub-Class Members to buy Defendants'

Products.

151.   Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law § 349(a) and Plaintiff Stewart and the New York Sub-Class have been damaged thereby.

152.   As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff Stewart and the New York Sub-Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

153.   Plaintiff Stewart and the New York Sub-Class Members seek damages, including treble damages, under GBL § 349.

**EIGHTH CAUSE OF ACTION**
**Violation of New York GBL § 350**

154.   Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

155.   N.Y. Gen. Bus. Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

156.   N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

157.   Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Products inasmuch as they misrepresent that the Products do not contain artificial flavors.

158.   Plaintiff Stewart and the New York Sub-Class Members have been injured inasmuch as they relied upon the labeling, packaging and advertising to purchase the Products based on Defendants' representations — "no artificial flavors." Accordingly, Plaintiff Stewart and the New York Sub-Class Members did not receive what they bargained and/or paid for.

159.   Defendants' advertising, packaging and product labeling induced Plaintiff Stewart and the New York Sub-Class Members to buy Defendants' Products.

160.   Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

161.   Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

162.   Defendants made the material misrepresentations described in this complaint in Defendants' advertising, and on the Products' packaging and labeling.

163.   Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

164.   As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff Stewart and the New York Sub-Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

165.   Plaintiff Stewart and the New York Sub-Class Members seek damages, including treble damages, under GBL § 350.

## NINTH CAUSE OF ACTION
### Violation of New York GBL § 350-a(1) by Omission

166.   Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

167.   N.Y. Gen. Bus. Law § 350-a(1) expressly covers material omissions:

> In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual…

168. Defendants' products' labeling and advertising contain misleading and/or unfair material omissions concerning Defendants' Products. The Products' labeling and advertising omit that the Products contain artificial flavors.

169. Plaintiff Stewart and the New York Sub-Class Members have been injured inasmuch as they relied upon the labels and advertising to purchase the Products that, contrary to Defendants' labels and advertising, contain artificial flavors.

170. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

171. Defendants' dissemination of advertising and labeling containing material omissions of fact constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

172. Defendants' material misrepresentations by way of omission, as described in this First Amended Complaint, were substantially uniform in content,

presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations by way of omission.

173. Defendants' advertising and labeling for the Products induced Plaintiff Stewart and the New York Sub-Class Members to buy the Products.

174. Plaintiff Stewart and the New York Sub-Class Members relied on Defendants' advertising, which was deceptive, false, and contained material omissions.

175. As a result of Defendants' false and misleading advertising and labeling, Plaintiff Stewart and the New York Sub-Class Members are entitled to monetary and compensatory damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

176. Plaintiff Stewart and the New York Sub-Class Members seek damages, including treble damages, under GBL § 350-a(1).

**TENTH CAUSE OF ACTION**
**Violations of the Texas Deceptive Trade Practices Act**
**Tex. Bus. & Com. Code § 17.46,** *et seq.*

176. Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

177.   Plaintiff Stewart is a "person" as defined in Tex. Bus. & Com. Code § 17.45(3), as he is a natural person.

178.   Defendants are both a "person" as defined in Tex. Bus. & Com. Code § 17.45(3), as they are corporations, and business entities and/or associations.

179.   Tex. Bus. & Com. Code § 17.46(a) states:

> False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

180.   Tex. Bus. & Com. Code § 17.46(b) states, except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

> (7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;
> …
> (9) advertising goods or services with intent not to sell them as advertised.

181.   Tex. Bus. & Com. Code § 17.50(a) states, a consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

> (1)     the use or employment by any person of a false, misleading, or deceptive act or practice that is:

(A) specifically enumerated in a subdivision of subsection (b) of Section 17.46 of this subchapter; and

(B) relied on by a consumer to the consumer's detriment…

182. Through their representation that the Products contain no artificial flavors, Defendants engaged in false, misleading, and deceptive acts, and the deceptive acts constituted a producing cause of the damages suffered by Plaintiff Stewart and the Texas Sub-Class Members, as they relied on Defendants' acts to their detriment.

183. Tex. Bus. & Com. Code § 17.50(b) states, in a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages;

(2) an order enjoining such acts or failure to act;

(3) orders necessary to restore to any party to the suit any money or property, real or personal, which may have been acquired in violation of this subchapter; and

(4) any other relief which the court deems proper, including the appointment of a receiver or the revocation

of a license or certificate authorizing a person to engage in business in this state if the judgment has not been satisfied within three months of the date of the final judgment. The court may not revoke or suspend a license to do business in this state or appoint a receiver to take over the affairs of a person who has failed to satisfy a judgment if the person is a licensee of or regulated by a state agency which has statutory authority to revoke or suspend a license or to appoint a receiver or trustee. Costs and fees of such receivership or other relief shall be assessed against the defendant.

184.   In taking the actions and omissions set forth above, and engaging in false, misleading, and deceptive acts set forth above, Defendants violated the Texas Deceptive Trade Practices Act, including, but not limited to Tex. Bus. & Com. Code § 17.46.

185.   By reason thereof, Plaintiff Stewart and the Texas Sub-Class Members are entitled to a judgment against Defendants, declaring that Defendants' conduct violated Tex. Bus. & Com. Code § 17.46, enjoining Defendants from engaging in similar conduct in the future, and awarding actual damages, mental anguish damages, costs, and treble damages.

## ELEVENTH CAUSE OF ACTION
## Violations of the Georgia Uniform Deceptive Trade Practices Act
## OCGA § 10-1-372, *et seq.*

186.   Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

187.   Plaintiff Stewart is a "person" as defined in OCGA § 10-1-371(5), as

he is an individual.

188. Defendants are both a "person" as defined in OCGA § 10-1-371(5), as they are corporations, and business entities and/or associations.

189. OCGA § 10-1-372(a) states, a person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:

> (7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;
> …
> (9) Advertises goods or services with intent not to sell them as advertised.

190. OCGA § 10-1-373 states:

> (a)     A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source.
>
> (b)     Costs shall be allowed to the prevailing party unless the court otherwise directs. The court, in its discretion, may award attorney's fees to the prevailing party if:
>
> > (1)     The party complaining of a deceptive trade practice has brought an action which he knew to be groundless; or
> >
> > (2)     The party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive.

(c)     The relief provided in this Code section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state.

191.    Through their representation that the Products contain no artificial flavors, Defendants engaged in false, misleading, and deceptive acts, and the deceptive acts constituted a producing cause of the damages suffered by Plaintiff Stewart and the Georgia Sub-Class Members, as they relied on Defendants' acts to their detriment.

192.    In taking the actions and omissions set forth above, and engaging in false, misleading, and deceptive acts set forth above, Defendants violated the Georgia Uniform Deceptive Trade Practices Act, including, but not limited to OCGA § 10-1-372.

193.    By reason thereof, Plaintiff Stewart and the Georgia Sub-Class Members are entitled to a judgment against Defendants, declaring that Defendants' conduct violated OCGA § 10-1-372, enjoining Defendants from engaging in similar conduct in the future, and costs.

## TWELFTH CAUSE OF ACTION
### Violations of the Georgia Fair Business Practices Act
### OCGA § 10-1-393, *et seq.*

194.    Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

195.   Plaintiff Stewart is a "person" as defined in OCGA § 10-1-392(24), as they are both natural persons.

196.   Plaintiff Stewart is a "consumer" as defined in OCGA § 10-1-392(6), as they are both natural persons

197.   Defendants are both a "person" as defined in OCGA § 10-1-392(24), as they are corporations, and business entities and/or associations.

198.   Defendants acts as alleged above are "consumer acts or practices" as defined in OCGA § 10-1-392(7) as their acts or practices were intended to encourage consumer transactions.

199.   OCGA § 10-1-393 states:

> (a) Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful.

> (b) By way of illustration only and without limiting the scope of subsection (a) of this Code section, the following practices are declared unlawful:

>> (7) Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;

>> …

>> (9) Advertising goods or services with intent not to sell them as advertised

>> …

200.   OCGA § 10-1-399 states:

> (a) Any person who suffers injury or damages as a result of a violation of Chapter 5B of this title, as a result of consumer acts or practices in violation of this part, as a result of office supply transactions in violation of this part or whose business or property has been injured or damaged as a result of such violations may bring an action individually, but not in a representative capacity, against the person or persons engaged in such violations under the rules of civil procedure to seek equitable injunctive relief and to recover his or her general and exemplary damages sustained as a consequence thereof in any court having jurisdiction over the defendant; provided, however, exemplary damages shall be awarded only in cases of intentional violation….

> (b) At least 30 days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be delivered to any prospective respondent. Any person receiving such a demand for relief who, within 30 days of the delivering of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning this rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner. The demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state….

> (c) Subject to subsection (b) of this Code section, a court shall award three times actual damages for an intentional violation.

(d) If the court finds in any action that there has been a violation of this part, the person injured by such violation shall, in addition to other relief provided for in this Code section and irrespective of the amount in controversy, be awarded reasonable attorneys' fees and expenses of litigation incurred in connection with said action; provided, however, the court shall deny a recovery of attorneys' fees and expenses of litigation which are incurred after the rejection of a reasonable written offer of settlement made within 30 days of the mailing or delivery of the written demand for relief required by this Code section; provided, further, that, if the court finds the action continued past the rejection of such reasonable written offer of settlement in bad faith or for the purposes of harassment, the court shall award attorneys' fees and expenses of litigation to the adverse party. Any award of attorneys' fees and expenses of litigation shall become a part of the judgment and subject to execution as the laws of Georgia allow.

(e) Any manufacturer or supplier of merchandise whose act or omission, whether negligent or not, is the basis for action under this part shall be liable for the damages assessed against or suffered by retailers charged under this part. A claim of such liability may be asserted by cross-claim, third-party complaint, or by separate action.

(f) It shall not be a defense in any action under this part that others were, are, or will be engaged in like practices.

(g) In any action brought under this Code section the Attorney General shall be served by certified or registered mail or statutory overnight delivery with a copy of the initial complaint and any amended complaint within 20 days of the filing of such complaint. The Attorney General shall be entitled to be heard in any such action, and the court where such action is filed may enter an order requiring any of the parties to serve a copy of any other pleadings in an action upon the Attorney General

201.   Through their representation that the Products contain no artificial flavors, Defendants engaged in false, misleading, and deceptive acts, and the deceptive acts constituted a producing cause of the Plaintiffs' damage as Plaintiffs relied on Defendants' acts to their detriment.

202.   In taking the actions and omissions set forth above, and engaging in false, misleading, and deceptive acts set forth above, Defendants violated the Georgia Fair Business Practices Act, including, but not limited to OCGA § 10-1-393.

203.   By reason thereof, Plaintiffs are entitled to a judgment against Defendants, declaring that Defendants' conduct violated OCGA § 10-1-393, enjoining Defendants from engaging in similar conduct in the future, and awarding actual damages, exemplary damages, costs, treble damages, and attorney's fees.

## THIRTEENTH CAUSE OF ACTION
### Violations of Consumer Legal Remedies Act
### Cal. Civ. Code § 1750, *et seq*.

204.   Plaintiffs incorporate all of the allegations and statements made in paragraphs 1 through 81 above as if fully reiterated herein.

205.   Defendants' actions as detailed above constitute a violation of the Consumer Legal Remedies Act, Cal. Civ. Code §1770, to the extent that Defendants violated the following provisions of the CLRA:

a.      Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; Cal. Civ. Code § 1770(5);

b.      Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; Cal. Civ. Code § 1770(7);

c.      Advertising goods or services with intent not to sell them as advertised; Cal. Civ. Code §1770(9);

d.      Representing that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law; Cal. Civ. Code §1770(14); and

e.      Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not; Cal. Civ. Code §1770(16);

206.   On or about January 27, 2020 and April 7, 2020, through their Counsel of record, using certified mail with a return receipt requested, Plaintiffs served Defendants with notice of their violations of the CLRA, and asked that Defendants correct, repair, replace, or otherwise rectify the goods and services alleged to be in

violation of the CLRA; this correspondence advised Defendants that they must take such action within thirty (30) calendar days, and pointed Defendants to the provisions of the CLRA that Plaintiffs believe to have been violated by Defendants. Defendants have not replied to this notice letter with a letter dated May 7, 2020, and thus refused to adequately correct, repair, replace, or otherwise rectify the issues raised therein.

## MISCELLANEOUS

207.   Plaintiffs and the Class and Sub-Classes' Members allege that they have fully complied with all contractual and other legal obligations and fully complied with all conditions precedent to bringing this action or all such obligations or conditions are excused.

## REQUEST FOR JURY TRIAL

208.   Plaintiffs request a trial by jury as to all claims so triable.

## PRAYER FOR RELIEF

209.   Plaintiffs, on behalf of themselves, the Class, and the Sub-Classes, request the following relief:

> (a)   An order certifying the Class and Sub-Classes and appointing Plaintiffs as Representatives of the Class and Sub-Classes;
>
> (a)   An order certifying the undersigned counsel as Class and Sub-Class Counsel;

(b)     An order requiring Defendants, at their own cost, to notify all Class and Sub-Class Members of the unlawful and deceptive conduct herein;

(c)     An order requiring Defendants to engage in corrective advertising regarding the conduct discussed above;

(d)     Actual damages suffered by Plaintiffs and the Class Sub-Classes' Members as applicable, or full restitution of all funds acquired from Plaintiffs and the Class Sub-Classes' Members from the sale of the misbranded Products during the relevant class and sub-class periods;

(e)     Punitive damages, as allowable, in an amount determined by the Court or jury;

(f)     Any and all statutory enhanced damages;

(g)     All reasonable and necessary attorneys' fees and costs provided by statute, common law, or the Court's inherent power;

(h)     Pre-judgment and post-judgment interest; and

(i)     All other relief, general or special, legal and equitable, to which Plaintiffs and the Class Sub-Classes' Members may be justly entitled as deemed by the Court.

Dated:  February 19, 2021          Respectfully submitted,

                                   LAW OFFICES OF TODD M. FRIEDMAN, P.C.

                                   By: /s Todd M. Friedman
                                      TODD M. FRIEDMAN, ESQ.
                                      Attorney for Plaintiffs Narguess Noohi
                                      and Robert Bryce Stewart III

Filed electronically on this 19th day of February, 2021, with:

United States District Court CM/ECF system

Notification sent via ECF on this 19th day of February, 2021 to:

Honorable Dale S. Fischer
Honorable Steve Kim
United States District Court
Central District Court of California

Dean N. Panos
Jenner & Block LLP
353 North Clark Street
Chicago, IL 60654
dpanos@jenner.com

Alexander M. Smith
Kate T. Spelman
Jenner & Block LLP
633 West 5th Street
Suite 3600
Los Angeles, CA 90071-2054
asmith@jenner.com
kspelman@jenner.com

s/Todd Friedman
   Todd Friedman